2009 VT 111

## State of Vermont v. William J. Hinchliffe

[987 A.2d 988]

No. 08-456

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed November 6, 2009

*Thomas Donovan, Jr.*, Chittenden County State's Attorney, and *Andrew R. Strauss*, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Richard R. Goldsborough* and *Clare O'Shaughnessy* of *Kirkpatrick & Goldsborough, PLLC*, South Burlington, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant appeals his conviction of stalking the complainant, his ex-wife, in violation of 13 V.S.A. § 1062. On appeal, defendant argues that the trial court erred in denying his motions for dismissal, acquittal, and a new trial because the trial

court (1) improperly admitted evidence of the complainant's belief about defendant's prior domestic assault on a third party, and (2) applied an overbroad interpretation of the statute. We affirm.

¶ 2. The record reveals the following. Defendant and the complainant were formerly married and have two children together who were thirteen at the time of the alleged acts. Following their divorce in 1990, they shared legal rights and responsibilities, and the complainant had sole physical rights. Defendant and the complainant had weekly phone calls on Sunday night to discuss the children. Their arrangement was generally successful until late spring 2007, when the contact between defendant and the complainant began to change and their discussions were often not child-focused. Defendant began contacting the complainant more frequently, leaving messages on her cell phone, work phone and home phone, as well as sending her text messages. Their discussions often escalated with defendant yelling and calling the complainant names. Due to defendant's excessive contact, the complainant felt harassed and went to the police on July 6. After discussing her options with the police, however, she decided not to file a complaint at that time.

¶ 3. Defendant continued to contact the complainant. On one occasion, defendant arrived at the complainant's house unannounced at 7:00 a.m. to deliver a letter. She found the behavior unsettling and again went to the police in August. The police contacted defendant and asked him not to contact his ex-wife except on Sunday evenings or if there was an emergency involving the children. Defendant continued to call, text and email the complainant. In addition, one Sunday morning at 9:00 a.m., defendant came to the complainant's house unannounced, yelling and screaming at the complainant for speaking with defendant's former girlfriend. Defendant was several feet away from the complainant while he was yelling. He eventually left after several requests. The complainant again went to the police, and defendant was charged with stalking in violation of 13 V.S.A. § 1062.

¶ 4. Prior to trial, defendant moved to dismiss the stalking charge, V.R.Cr.P. 12(d)(1), arguing that his conduct did not meet the statutory definition. Stalking requires the State to prove that the perpetrator's actions would cause a reasonable person to fear for her physical safety or to fear substantial emotional distress, 13 V.S.A. § 1061(1)(B), and defendant argued the State lacked such evidence. In addition, to prove stalking by harassment, as alleged

here, the State must show that the perpetrator's conduct would cause a reasonable person to fear bodily injury. 13 V.S.A. § 1061(4). Defendant contended that, even accepting his ex-wife's account of his behavior, there was no evidence to support a finding of such fear since he never threatened the complainant or was violent towards her.

¶ 5. At the hearing on defendant's motion, the complainant testified concerning defendant's behavior. She explained that defendant repeatedly phoned and sent her text messages. She testified that the calls were negative and that defendant was often angry. She also testified about the two occasions when defendant appeared at her house unexpectedly and had angrily confronted her. She explained that defendant's behavior made her feel uncomfortable and that it was harassing. She testified that defendant's actions caused her to bring her partner to exchanges of the children because defendant's angry outbursts were "scary." On cross-examination, the complainant explained that defendant was "not threatening to rape [her] or kill [her]," but she further testified that she felt threatened by "his anger and his erratic behavior." She admitted that defendant had not threatened her and that she was not scared of defendant hurting her or sexually assaulting her. The court questioned the complainant, including the following exchange:

THE COURT: Has he ever threatened to hurt you?

A: No.

THE COURT: Has he ever been violent to others?

A: Yes.

THE COURT: What do you know about that?

A: Well, I know he has some criminal charges against him that he just pled guilty to . . . .

In answer to subsequent questions, the complainant explained that in August, when the alleged stalking occurred, she knew that defendant and his ex-girlfriend were having problems and she believed that defendant had been arrested. Defendant did not object to the admission of this evidence.

¶ 6. At the end of the hearing, the court explained that it was a "close call," but denied the motion to dismiss. The court reasoned that

a jury verdict of guilty could be supported on the issue of whether or not a reasonable person would fear bodily injury and the jury will hear about the fact that the defendant was involved in domestic abuse with a prior girlfriend. He had to be bailed out of jail. This occurred before the so-called harassing phone calls, e-mails and text messages, before August 2007.

The case proceeded.

¶ 7. One week before trial, on February 4, 2008, the State notified defendant and the court that it intended to introduce evidence that defendant was convicted of simple assault on February 2, 2005 and that the complainant's knowledge of this conviction was relevant because it could make a reasonable person fear bodily injury. The following day, defendant filed a motion in limine to exclude evidence of defendant's prior criminal record. Defendant argued that the evidence was being offered solely to demonstrate propensity to commit crime, and was therefore not admissible under Vermont Rule of Evidence 404. At the pretrial motion hearing on the morning of trial, the State explained that it intended to introduce the complainant's testimony that she was aware of defendant's prior alleged simple assault, not the fact of defendant's conviction. Defendant countered that the evidence was inadmissible because the State had not properly notified defendant of its intent to introduce this testimony and the evidence was highly prejudicial. The court denied defendant's motion, concluding that the State provided sufficient notice and the evidence was relevant.

¶ 8. At trial, the complainant testified about defendant's harassing behavior. She explained that defendant contacted her repeatedly by phone and email, sometimes up to twelve to fifteen times in a week. She first contacted the police on July 6, but decided not to file a complaint at that time. In August, defendant came to her house very upset and yelled at her. He told her, "You're going to pay for this." She was scared of defendant's behavior and began bringing her partner to exchanges of the children. She said that defendant's behavior changed her life, and caused her to regularly check that the alarm system was on and the windows were latched. She further explained that defendant's actions made her nervous and gave her problems sleeping. In further support of her alleged fear of defendant, the complainant testified that in 2005

defendant had come to her house after being bailed out of jail for domestic abuse against his ex-girlfriend. She described how she then went to the ex-girlfriend's house to pick up some of defendant's belongings and saw that the ex-girlfriend had an abrasion behind her ear, and was trembling and crying. The complainant testified that although defendant never threatened her with bodily harm, she was scared of him.

¶ 9. She went to the police again on August 17. The officer she spoke with that day testified that he called defendant and told him not to contact the complainant except on Sunday evenings or for a child emergency. Despite these warnings, defendant continued to contact the complainant. She went to the police for a final time on August 29 after defendant barged into her home.

¶ 10. At the close of the State's evidence, defendant moved for judgment as a matter of law pursuant to Vermont Rule of Criminal Procedure 29, claiming that there was no evidence that defendant engaged in conduct that would cause a reasonable person to fear bodily injury. The court denied the motion, explaining that defendant's repeated phone calls met the requirement of a pattern of conduct. The court concluded that although defendant did not directly threaten the complainant, the jury could find that defendant's conduct could cause a reasonable person to fear bodily injury, given the context of defendant's actions. The court explained: "if a defendant's conduct taken in its totality is threatening by body language, by tone of voice and other evidence of threatening behavior on the part of an individual, then that is sufficient under the statute. And certainly there's evidence of that type of conduct in this case."

¶ 11. Defendant testified on his own behalf. He did not deny repeatedly contacting the complainant, but claimed that his calls and texts were related to the children and working out a contact schedule. He testified that his work schedule was erratic and therefore he legitimately needed to speak with his ex-wife to arrange pick up and drop off times for their children. He also explained that the complainant sometimes works from home and so he often called her home, cell and work numbers trying to reach her. He further testified that his children use his phone to call his ex-wife when they are with him, so some of the calls from his number may have been from the children. He denied ever threatening the complainant or intending to place her in fear of bodily injury.

¶ 12. At the close of the evidence, defendant again moved for acquittal. The court denied the motion, explaining that the statute does not require a specific verbal threat, and that defendant's conduct in context provided sufficient evidence to support the charge.

¶ 13. During the charge conference, defendant stated that the charges verged on a constitutional notice problem because the initial charging documents referred only to excessive phone calls, but at trial other conduct — including emailing, texting and showing up at the complainant's house — was added to support the charge. The court explained that the State could easily amend the charges to reflect the evidence and found no error. Defendant also requested an instruction requiring the jury to find that defendant had the specific intent to make the complainant fear bodily injury. The court charged the jury without adding a specific intent instruction. Following the court's instructions, there were no objections. The jury returned a verdict of guilty.

¶ 14. Defendant filed a motion for a new trial, raising several arguments related to complainant's testimony that defendant had assaulted an ex-girlfriend. Defendant first argued that the court erred in admitting the testimony because the evidence was of a prior bad act and the State failed to provide proper notice of its intent to offer this evidence. See V.R.Cr.P. 26(c) (requiring the State to provide defendant with seven days' notice of its intent to offer evidence of other criminal offenses under Vermont Rule of Evidence 404(b)). Defendant further contended that the evidence was highly prejudicial because it was introduced solely to demonstrate propensity and was therefore inadmissible under Vermont Rules of Evidence 403 and 404. The court denied the motion, concluding that the State provided timely notice of its intent to introduce defendant's prior assaultive conduct. The court further explained that the evidence was relevant to whether it was reasonable for the complainant to fear bodily injury.

¶ 15. On appeal, defendant challenges the court's denial of his motions for dismissal, for acquittal and for a new trial. Defendant's objections fall into two categories: first, defendant contends that the court erred in admitting testimony regarding the complainant's belief that defendant had assaulted a prior girlfriend; second, defendant challenges the court's interpretation of the stalking statute.

## I.

¶ 16. Defendant first argues that the court erred in denying his motions to dismiss, for acquittal and for a new trial because the court improperly admitted evidence regarding the complainant's knowledge of defendant's prior assault on his former girlfriend. To defeat a motion to dismiss, the State must demonstrate it has "substantial, admissible evidence as to the elements of the offense challenged by the defendant's motion." V.R.Cr.P. 12(d)(2). The sole issue in a motion for acquittal is the sufficiency of the evidence, and the standard is the same as for a motion to dismiss. *State v. Fanger*, 164 Vt. 48, 51, 665 A.2d 36, 37 (1995). On appeal from denial of a motion for acquittal, we consider "whether the evidence, when viewed in the light most favorable to the State and excluding any modifying evidence, fairly and reasonably tends to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt." *State v. Prior*, 174 Vt. 49, 53, 804 A.2d 770, 773 (2002) (quotation omitted).

¶ 17. In this case, defendant moved both for dismissal prior to trial and for acquittal at trial based on insufficient evidence. We review the motion for acquittal based solely on the evidence submitted by the State at trial because whether the State had sufficient evidence at the motion to dismiss stage is not dispositive. See V.R.Cr.P. 12(d)(2) (explaining that court may dismiss case without prejudice if the State does not present enough evidence to support a prima facie case). Even if the trial court had erred in denying defendant's motion to dismiss, a deficiency in evidence at the motion hearing stage would be harmless error if the State presented additional evidence at trial. See *State v. Burnham*, 145 Vt. 161, 166, 484 A.2d 918, 922 (1984) (concluding that deficiency in State's evidence at Rule 12(d) hearing was harmless because State had sufficient evidence at trial). Thus, we consider whether the evidence presented at trial, as viewed in the light most favorable to the State, fairly and reasonably demonstrates that defendant committed the offense of stalking beyond a reasonable doubt.

¶ 18. As we have recently explained, stalking contains three elements, two of which are defined in the alternative. *State v. Ellis*, 2009 VT 74, ¶ 17, 186 Vt. 232, 979 A.2d 1023. To prove that defendant stalked his ex-wife, the State was required to prove: first, that defendant engaged in "a course of conduct which

consists of following, lying in wait for, or harassing"; second, that the conduct served no legitimate purpose; and third, that the conduct "would cause a reasonable person to fear for his or her physical safety or would cause a reasonable person substantial emotional distress." 13 V.S.A. § 1061(1). In this case, the State's theory was that defendant's course of conduct was "harassing," which is defined in the statute as:

> actions directed at a specific person, or a member of the person's family, which would cause a reasonable person to fear unlawful sexual conduct, unlawful restraint, bodily injury, or death, including but not limited to verbal threats, written, telephonic, or other electronically communicated threats, vandalism, or physical contact without consent.

13 V.S.A. § 1061(4). The initial charging documents cited defendant's repeated phone calls to the complainant, but as the case progressed the State also alleged that defendant had harassed the complainant by repeatedly sending the complainant emails, transmitting text messages to her, arriving at her house uninvited and engaging in confrontational contact. All parties agreed that there was no evidence to demonstrate that defendant's conduct would cause a reasonable person to fear unlawful sexual conduct or unlawful restraint. Therefore, to demonstrate that defendant's actions were harassing, the State had to show that defendant's actions would cause a reasonable person to fear "bodily injury, or death." *Id.*

¶ 19. Defendant's sufficiency claim, both prior to and throughout his trial, was that his actions may have been annoying, but they were insufficient to cause such fear in a reasonable person. In support of his position, defendant claimed that he made no threats to the complainant or her family and that the complainant was not actually afraid of him.

¶ 20. To prove the fear element, the State relied on the complainant's testimony regarding defendant's acts, her resulting subjective fear and changed behavior, and her knowledge about defendant's prior assault of his ex-girlfriend. Defendant attempts to discredit all of these items. He argues that the complainant's testimony at trial that she was afraid of defendant was not reliable because at the motion to dismiss hearing she testified that she was not afraid of defendant. Defendant also claims that the

complainant's testimony regarding the prior assault was inadmissible because (1) the State failed to provide proper notice of its intent to introduce the evidence, (2) the evidence was admitted solely to demonstrate defendant's propensity to commit crime and therefore was inadmissible under Vermont Rule of Evidence 404(b), and (3) the prejudicial effect of the evidence greatly outweighed any probative value of the evidence under Rule of Evidence 403.

¶ 21. As an initial matter, we point out that defendant's emphasis on the lack of two pieces of evidence — a specific threat and the complainant's expressed fear of defendant — are not determinative as to whether there was sufficient evidence to support the stalking charge. *Ellis*, 2009 VT 74, ¶ 24. We recently explained that the statutory elements of stalking do not require the State to prove that the defendant threatened the victim or that the victim actually feared bodily harm.

> Threats are commonly present in stalking situations, and aid the State's case if present, but their absence is not fatal to a stalking prosecution. Similarly, the victim's fear may be helpful to the State, if present, but the critical element of the crime is defined solely in objective terms . . . and the absence of the victim's fear is not determinative.

*Id.*

¶ 22. With this background in mind, we turn to defendant's argument that the complainant's testimony at trial regarding her fear of defendant was not credible because it contradicted her statements to the police and her testimony at the motion to dismiss hearing. Defendant's argument is essentially that the complainant never claimed she was afraid of defendant until she testified at trial and therefore her claim is unbelievable and insufficient. This argument does not address the sufficiency of the evidence, but rather goes to the credibility of the witness and the weight of the evidence, matters which are entirely within the province of the jury. See *State v. Norton*, 134 Vt. 100, 103, 353 A.2d 324, 326 (1976) ("The credibility of the witnesses and the weight to be given their testimony is the sole province of the jury."). Defendant was able to argue this point to the jury. Through cross-examination, defendant demonstrated the alleged

inconsistencies in the complainant's reports to the police, her testimony at the pretrial hearing, and her testimony at trial. It was up to the jury to decide whether the complainant's testimony regarding her fear of defendant was credible. We will not second-guess the jury's determination of credibility, and, in the context of a motion for acquittal, we view the evidence in the light most favorable to the State. Therefore, we accept the complainant's testimony that she was afraid of defendant.

¶ 23. Next, we address defendant's claim that the court erroneously admitted the complainant's testimony regarding his prior assault. We are not persuaded by defendant's procedural argument and conclude that the State provided sufficient notice of its intent to introduce this evidence. Under Vermont Rule of Criminal Procedure 26(c), the State must notify a defendant at least seven days prior to trial of its intent to offer evidence of other criminal acts under Vermont Rule of Evidence 404(b). "The purpose of Rule 26(c) is to inform the defendant of crimes the State intends to introduce and to allow the defendant time to respond by a motion in limine or otherwise." *State v. Houle*, 162 Vt. 41, 45, 642 A.2d 1178, 1181 (1994). Seven days in advance of trial, the State notified defendant that it intended to introduce evidence of his prior assault conviction. While the notice stated that it would seek to introduce defendant's conviction of simple assault, the notice also explained that the State "intend[ed] to introduce at trial the fact that the alleged victim, [ex-wife], was aware of Defendant's prior conviction for simple assault." This notice sufficed to properly notify defendant of the State's intent to offer the evidence at trial.[1] Whatever the exact wording, it provided defendant with sufficient information to understand that the State intended to introduce evidence of his prior conviction through the complainant's testimony. Defendant obviously understood the State's notice because he was prompted to move in limine to exclude the evidence prior to trial. Therefore, there was no prejudice to defendant resulting from any lack of notice, and we decline to find any error. See *State v. Sanders*, 168 Vt. 60, 61-62, 716 A.2d 11, 13 (1998) (explaining that if a defendant actually brings a motion in limine to exclude prior bad act

---

[1] We assume, without deciding, that the State was required to provide defendant with notice of its intent to offer the evidence under Rule 26.

evidence, he cannot claim insufficient notice because the purpose of Rule 26 is fulfilled).

¶ 24. Defendant next argues that the evidence was inadmissible under Vermont Rule of Evidence 404(b). This rule provides that evidence of prior bad acts "is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." V.R.E. 404(b). Thus, while defendant's prior assault is inadmissible for the purpose of showing a general propensity to commit violent acts, it may be introduced "if it is relevant to some other legitimate issue." *State v. Bruyette*, 158 Vt. 21, 27, 604 A.2d 1270, 1272 (1992). The list of admissible purposes in the rule is not exhaustive. *State v. Forbes*, 161 Vt. 327, 332, 640 A.2d 13, 16 (1993).

¶ 25. While we recognize the need to be "vigilant in reviewing the admission of [prior bad act] evidence," *id.* at 330, 640 A.2d at 15, we conclude that in this case the complainant's testimony regarding defendant's prior assault on his ex-girlfriend was admissible under Rule 404(b) because it was relevant to whether a reasonable person in the victim's circumstances would fear bodily injury. As explained above, the stalking statute employs an objective standard by defining harassing behavior as conduct which "would cause a reasonable person to fear . . . bodily injury." 13 V.S.A. § 1061(4). Defendant contends that because the statute employs an objective standard, evidence of the victim's subjective knowledge is not admissible. We disagree. Although the statute requires the jury to view defendant's conduct from the perspective of a reasonable person, the victim's knowledge of defendant is relevant to the question of whether defendant's actions would have caused a reasonable person to fear bodily injury. Other states that have an objective standard in their stalking statute agree that this inquiry is measured by examining whether a reasonable person in the victim's circumstances would be afraid. See *Cooper v. Cooper*, 144 P.3d 451, 456 (Alaska 2006) (explaining that the objective inquiry in the stalking statute focuses on "whether a reasonable person in the same situation would also experience fear under the same circumstances"); *H.E.S. v. J.C.S.*, 815 A.2d 405, 417 (N.J. 2003) ("The reasonable standard refers to persons in the victim's position and with the

victim's knowledge of the defendant."); *State v. Ferebee*, 529 S.E.2d 686, 690 (N.C. Ct. App. 2000) (noting that reasonable fear provision of stalking statute includes "what frightens an ordinary, prudent person under the same or similar circumstances"); see also Nat'l Ctr. for Victims of Crime, The Model Stalking Code Revisited 35 (2007), http://www.ncvc.org (follow "Resource Library" hyperlink; then follow "Reports and Studies" hyperlink) (arguing that the objective statutory standard should be defined by a reasonable person in the victim's circumstances).

¶ 26. Thus, courts have admitted evidence of a defendant's prior relationship with and conduct towards a victim to show that a victim's fear is reasonable. See *Hayes v. State*, 717 So. 2d 30, 36 (Ala. Crim. App. 1997) (affirming admission of evidence of prior assault on victim to demonstrate that defendant's threat was credible and to show why she feared defendant); *Kenison v. State*, 107 P.3d 335, 344 (Alaska Ct. App. 2005) (concluding that evidence of deterioration of victim's relationship with defendant and history of nonconsensual contacts were admissible to evaluate whether victim's fear was reasonable); *State v. Breen*, 767 A.2d 50, 59 (R.I. 2001) (holding that "to establish the 'reasonable person' objective element in the Rhode Island stalking statute, it is necessary to understand the circumstances under which the contacts occurred"). In addition, a victim's knowledge of a defendant's conduct towards a third party may be relevant to whether it is reasonable for the victim to fear the defendant. See *People v. McClelland*, 49 Cal. Rptr. 2d 587, 593 (Ct. App. 1996) (holding that a reasonable person, aware that the defendant had been convicted of attempted murder in burning his former wife's house, would fear for her safety upon hearing the statement "Fire bomb at 6:00 o'clock").

¶ 27. The jury was required to determine whether a reasonable person in the complainant's circumstances would have feared bodily injury, and the complainant's knowledge of defendant's other aggressive acts is relevant to this fear. Without context, some behaviors do not seem inherently threatening. See *Fly v. State*, 494 S.E.2d 95, 98 (Ga. Ct. App. 1997) (viewing the defendant's actions in context of his history with the victim to conclude that her fear was reasonable); *Breen*, 767 A.2d at 59 (admitting evidence of the defendant's prior conviction of stalking the complainant to demonstrate why the victim was so distraught

over receiving letters from the defendant); see also *State v. Hendricks*, 173 Vt. 132, 139, 787 A.2d 1270, 1276 (2001) (affirming admission of prior abusive conduct towards victim to give context for charged domestic abuse). Thus, given the relevancy of the evidence to a key element of the offense — whether defendant's conduct would cause a reasonable person to fear bodily injury — the evidence was admissible under Rule 404(b).[2]

¶ 28. Although relevant, evidence of prior acts will be excluded "if its probative value is substantially outweighed by its prejudicial effect." *Bruyette*, 158 Vt. at 27, 604 A.2d at 1272; see V.R.E. 403. Certainly, this evidence was prejudicial, but the question is whether it resulted in unfair prejudice, and the trial court has substantial discretion in making this determination. *State v. McElreavy*, 157 Vt. 18, 23, 595 A.2d 1332, 1334-35 (1991).

> In balancing probative value against prejudicial effect, the trial court looks at the need for prior act evidence in light of other evidence available to the prosecution that supports the same issue, as well as the degree of its probative value, and the extent to which the jury is likely to be aroused to hostility by the evidence.

*Bruyette*, 158 Vt. at 31, 604 A.2d at 1274-75. Applying these factors to the evidence at issue, we conclude that the court did not abuse its discretion.

¶ 29. The complainant's knowledge of defendant's assault on his ex-girlfriend was a key component of the State's case that the complainant's fear was reasonable. While the complainant also testified that she was afraid and outlined how her behavior had changed as a result of the stalking, there were no overt threats of violence to explain why defendant's incessant contacts caused her to fear him. The complainant's knowledge of defendant's prior conduct gave the jury further context for evaluating whether the complainant's fear was reasonable. See *State v. Hoak*, 216 P.3d 1291, 1294 (Idaho Ct. App. 2009) (holding that evidence of the defendant's prior misconduct toward the victim was "highly pro-

---

[2] In a related claim, defendant argues that the prior conduct was not relevant because it was against a third party and occurred two years prior to the stalking behavior at issue in this case. These factors go to the persuasiveness, not the admissibility, of the evidence. See *Hayes*, 717 So. 2d at 37 (holding that remoteness of prior assault relevant to weight and credibility of evidence, not to admissibility).

bative to show that his subsequent stalking behavior would have alarmed the victim and would cause a reasonable person substantial emotional distress"); see also *Sanders*, 168 Vt. at 62, 716 A.2d at 13 (holding that defendant's prior abuse of victim admissible to show why victim was afraid and that defendant's threat was credible). Furthermore, although this information was prejudicial to defendant, it was not so inherently objectionable as to cause the jury to be hostile to defendant.

## II.

¶ 30. Defendant next argues that the court erred in denying his motions for a new trial and for acquittal because the court's interpretation of the statute was overbroad and vague as applied to defendant. Defendant's constitutional argument focuses on the court's interpretation of what amounts to harassing behavior under the statute. In denying defendant's motion for acquittal, the court concluded that the statute did not require a direct verbal threat and that, although defendant's conduct did not fit within the statute's enumerated examples, the "including but not limited to" language was broad enough to cover defendant's conduct. 13 V.S.A. § 1061(4). Defendant contends that the court's interpretation is erroneous because it did not require the jury to find that he acted with specific intent to harass and allowed the jury to convict him based on conduct that is not criminalized by the statute.

¶ 31. We do not reach these constitutional arguments because they were not raised below. "Even when the defendant asserts a violation of constitutional rights, failure to promptly raise the issue before the trial court results in a waiver." *State v. Stanislaw*, 153 Vt. 517, 528, 573 A.2d 286, 292 (1990); see *State v. Wool*, 162 Vt. 342, 346, 648 A.2d 655, 658 (1994). In the trial court, defendant did not raise any issues regarding the constitutionality of the statute, and therefore he has not properly preserved the claims for appeal.

¶ 32. There is no merit to defendant's assertion that the constitutional issues were sufficiently raised because during the charge conference defendant's counsel talked about the "constitutional problem of notice." This reference did not preserve the objection now articulated by defendant because the statement during the charge conference refers to an entirely different issue — whether defendant was provided with sufficient notice of what

acts the State alleged were criminal. "To properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it." *State v. Ben-Mont Corp.*, 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994). Defendant's comment during the charge conference did not reference the statute, the intent element of the statute or that defendant deemed the court's interpretation of the statute to be unconstitutionally vague and overbroad. Therefore, there was no basis for the trial court to understand the issue now raised by defendant and to rule on it. Merely mentioning a "constitutional problem" during an unrelated part of the trial proceedings was not sufficient to preserve the objection now asserted on appeal. See *id.*

¶ 33. Furthermore, defendant's argument on appeal concerning the court's interpretation of the statute — although couched as an objection to the court's denial of his motions for acquittal and a new trial — is essentially that the trial court erred in instructing the jury on the elements of the crime. Defendant, however, failed to object to any portion of the jury instructions after the court charged the jury. To preserve an objection to the jury instructions, defendant must object "before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." V.R.Cr.P. 30. "The primary reason for the rule is to give the trial court one last opportunity to avoid an error." *State v. Wheelock*, 158 Vt. 302, 306, 609 A.2d 972, 975 (1992). Defendant did not make any objections to the jury instructions and has therefore waived his objection to them. See *State v. Martin*, 2007 VT 96, ¶ 42, 182 Vt. 377, 944 A.2d 867.

¶ 34. On appeal, defendant has not argued that the court's interpretation of the statute or that the court's instructions to the jury were plain error. Therefore, we do not address these questions. See *State v. Jackson*, 2008 VT 71, ¶ 7, 184 Vt. 173, 956 A.2d 1126 (declining to address claim raised for the first time on appeal where the defendant failed to argue plain error); accord *State v. Covino*, 163 Vt. 378, 381, 658 A.2d 916, 918 (1994).

*Affirmed.*