**STATE of Vermont v. Kenneth DAVIS**

[992 A.2d 302]

No. 08-304

¶ 1. February 1, 2010. Defendant appeals his conviction of aggravated sexual assault following a jury trial in Chittenden District Court. He claims he was denied a fair trial and his right to due process was violated when the State elicited and compelled knowingly false testimony, resulting in prejudice against him. Specifically, defendant contends that the State's subpoena of a witness — his alleged accomplice — and the court's order compelling the testimony of that witness violated due process because the State knew the witness would lie on the stand. We affirm.

¶ 2. The events underlying defendant's conviction and appeal may be briefly recounted from the record. On the evening of September 8, 2006, the victim, an eighteen-year-old woman, was out at a party with a friend. She became intoxicated to the point of vomiting, and her friend decided to drive her home. En route, the police stopped the friend for driving under the influence and took her to the police station for processing. The victim was left at the car in Winooski and apparently began walking home. Shortly after leaving her friend's car, she was picked up by two men whom she did not know, defendant and the witness, who offered to drive her home. Instead, they drove her to a house and proceeded to force her to perform various sexual acts, including intercourse. The victim later told police that, although drunk, she never consented to the sexual acts and repeatedly told the two men that they were hurting her, and she begged them to stop.

¶ 3. After the assault, the two men drove the victim back to Winooski and dropped her off. She contacted her friend, who had been released from police custody, and upon picking her up, her friend brought her to the hospital to be examined and to complete a rape kit. The victim subsequently gave a statement to the police. Following a three-month investigation, defendant and the witness were both charged with aggravated sexual as-

sault under 13 V.S.A. § 3253(a)(2).[1] Defendant admitted to having sexual relations with the victim, but argued it was consensual.

¶ 4. Three weeks before trial, the court denied the State's motion for a joint trial and granted defendant's motion for severance. Ten days later, the State notified defendant that the accomplice/witness would testify for the State. By granting the witness use and derivative-use immunity and issuing a subpoena, the State expected the witness to provide necessary testimony as to his own identity; the presence of defendant, the witness, and the victim in the car prior to the assault; the substance of conversations he had with defendant before picking up the victim and after dropping her off; the location of the alleged assault; and his perception of the victim's level of intoxication. The witness had given much of this information in a sworn statement to police during the investigation of the assault, including his opinion that the victim was intoxicated and that he judged her to be around an eight on a one-to-ten scale of intoxication. In its request to the court to issue the immunity order, the State also expressed its intent to impeach the witness if he testified contrary to his previous statement, despite the grant of immunity. Pursuant to 12 V.S.A. § 1664, the

court issued the immunity order and subpoena a week before trial.

¶ 5. The witness filed a motion to quash the subpoena, arguing primarily that his testimony was not "necessary to the public interest" as required under 12 V.S.A. § 1664(c)(1), and thus, the court could not compel the witness to testify in contravention of his privilege against self-incrimination.[2] Defendant challenged the State's decision to have the witness testify on the grounds that the witness's identity and testimony were inadmissible as they derived from an interrogation of defendant which was suppressed by the court. The witness's identity was, therefore, excludable as fruit of the poisonous tree. Defendant also argued that the late notice of the witness testifying precluded an opportunity to properly depose him. The court denied the motions, but required the State to prove an independent source concerning the identity of the witness. The State provided such grounds, and the court permitted the parties to depose the witness after the second day of trial.

¶ 6. During the course of the deposition, the witness made several statements the State viewed as contrary to the earlier statements he had made to police. The most significant contradictions involved the witness's opinion on the victim's state of intoxication at the time of the alleged

[1] 13 V.S.A. § 3253(a)(2):

> (a) A person commits the crime of aggravated sexual assault if the person commits sexual assault under any one of the following circumstances:
>
> . . . .
>
> (2) The actor is joined or assisted by one or more persons in physically restraining, assaulting or sexually assaulting the victim.

[2] 12 V.S.A. § 1664(c):

> (c) The attorney general or a state's attorney may request an order [to subpoena a witness and grant immunity] when in his judgment:
>
> (1) the testimony or other information from such individual may be necessary to the public interest; and
>
> (2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

assault and her consent to the sexual acts. On the third day of trial, the State informed the court that the testimony the witness gave at the deposition the day before differed significantly from the sworn statement that he had given to the police. The State made it clear that it would still call the witness to testify and provide some corroborating evidence, but would seek to impeach him if his testimony remained inconsistent. Moreover, the State attempted to assure that the witness understood that the grant of immunity would not protect him from a charge of perjury. The witness renewed his motion to quash, arguing that, in light of his deposition testimony, it was clear the State was only putting him on the stand "either to try to extract perjury or to impeach him," and, as such, the State could no longer meet the necessity standard under 12 V.S.A. § 1664. Defendant joined the witness's objections to allowing this testimony, but gave no further legal argument. The court denied the objections, and the witness was forced to testify.

¶ 7. The witness testified and identified himself as one of the two people who had engaged in sexual acts with the victim on the date in question and described the sexual activity that occurred. He asserted that the sexual activity was consensual, and, most importantly, at trial he denied that the victim was intoxicated. After closing argument, defendant moved for dismissal of the case in the interests of justice on the grounds that the State put the witness on the stand "knowing that he was not gonna tell the truth" and thereby "deliberately use[d] testimony that they believe is perjured." The court denied defendant's motion. The jury found defendant guilty. Two weeks later, defendant moved for judgment of acquittal or new trial, arguing that the State had compelled the witness to testify solely "for the purpose of extracting testimony it believed to be false rather than to elicit facts material to the prosecution." The court denied the motion. This appeal followed.

¶ 8. Defendant's central claim on appeal follows from his concerns raised at trial. Because the State knew the witness's statement to the police and his testimony at his deposition were inconsistent, and because the State did not need the witness's testimony to make its case, defendant contends that the State put the witness on the stand mainly to perjure himself, and this "false" testimony was used to convict defendant. This resulted in prejudice against him, defendant argues, and was a violation of his right to a fair trial. The State responds that defendant did not preserve this due process argument at trial and only joined in the witness's challenge to the subpoena without providing his own legal foundation or detailing the prejudice he faced. Even if preserved, the State concludes, defendant's legal argument is without merit.

¶ 9. As a threshold matter, we first examine the State's lack-of-preservation claim. This Court has long held that issues not presented at trial may not be raised on appeal. See, e.g., *State v. Hinchliffe*, 2009 VT 111, ¶ 32, 186 Vt. 487, 987 A.2d 988; *Bebee v. Steel*, 2 Vt. 314, 316 (1829). The presentation of issues below, moreover, must be made "with specificity and clarity." *Hinchliffe*, 2009 VT 111, ¶ 32 (quotation omitted). "However, where a litigant's argument is clear enough for the trial court to evaluate it and for an opponent to respond to it, the claim is adequately preserved for appeal." *State v. Mumley*, 2009 VT 48, ¶ 18, 186 Vt. 52, 978 A.2d 6.

¶ 10. Throughout the trial, defendant repeatedly raised concerns over the court's decision allowing the State to force the witness to testify. Before the trial, during the trial, immediately following closing arguments, and in a post-trial motion, defendant requested that the State not be permitted to compel the witness's testimony, especially in light of the fact that the State expected it could be inconsistent. While the State is correct that the witness's lawyer made the bulk of

this line of legal argument in the witness's initial motion to quash the subpoena and during trial, defendant included such an argument in his motion for mistrial and his motion for a new trial. Moreover, in the dozens of pages of trial transcript devoted to these concerns, this issue was raised with sufficient specificity and clarity at trial such that the court and the State had ample opportunity to respond to it.

¶ 11. Turning to defendant's claim of error — that the State's use of the witness's testimony violated his due process rights because it was knowingly false — we recognize two conclusive flaws in this argument, one factual and the other legal. As a factual claim, the record contradicts defendant's argument. The State, both orally and in writing, repeatedly articulated to the trial court the favorable testimony that it expected the witness to give. The State also expressed its hope that an explanation of immunity and the threat of a perjury charge would convince the witness to testify truthfully, which for the most part meant in accordance with his earlier sworn statement to police. And the witness ultimately gave such testimony, in part, corroborating the victim's story on certain material points, on behalf of the State.

¶ 12. Defendant's argument depends entirely on the fact that the witness's deposition testimony differed from his earlier sworn statement. That fact, however, does not support his claim of error. As the trial court stated in denying defendant's motion for a mistrial:

> How [the State] could anticipate how [the witness] would testify at trial, in a courtroom, based on deposition testimony, is a leap of faith that I am not willing to take. Many witnesses testify one way in their deposition, another way in a sworn affidavit, and a third way in the courtroom . . . .

The fact that the witness also testified that the victim was not intoxicated and that the intercourse was consensual, thus forcing the State to impeach him and to contest his credibility on these issues in closing argument, likewise belies defendant's claim. That the trial unfolded as it did does not establish or support defendant's claim that the State purposefully acted so as to bring about this result.

¶ 13. The legal flaw in defendant's argument is likewise dispositive to his due process claim. A conviction obtained through the use of false evidence, which the State knows to be false and which the State either solicits or allows to go uncorrected, is a violation of due process under the Fourteenth Amendment of the United States Constitution. *State v. Ladabouche*, 146 Vt. 279, 281, 502 A.2d 852, 854 (1985) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). To succeed on such a claim, a defendant must establish not only the knowing use of false evidence, but that he suffered prejudice as a result. *Id.* at 283, 502 A.2d at 855.

¶ 14. Here, defendant cannot establish the "use" of false testimony, that such use was "knowing," or that prejudice resulted from such use. "Use" of false evidence that creates a due process violation under *Ladabouche* and *Napue* means presenting false evidence and asking the jury to take it as true — in other words, misleading the jury and thereby obtaining a "tainted conviction." *Napue*, 360 U.S. at 269; see *Ladabouche*, 146 Vt. at 282, 502 A.2d at 855. For instance, in *Napue*, the United States Supreme Court held that the petitioner was denied due process because the State, although not soliciting false evidence, allowed it to go uncorrected when it appeared. 360 U.S. at 269-71. Here, defendant argues that the State put on the witness knowing that he would testify "falsely," meaning differently from his prior sworn statement and, presumably, differently from what the State believed to be true. However, unlike

*Napue*, here the State did not ask the jury to believe the "false" portions of testimony. Instead, the State attempted to impeach the witness with his prior sworn statement, so as to discredit the statements that went against the State's theory of the case. As the State did not attempt to mislead the jury through the presentation of a witness's false testimony, there was no due process violation under *Ladabouche* and *Napue*.

¶ 15. Likewise, as a matter of law, the State could not have "known" that the witness would testify falsely. As our case law establishes, "[t]he claim that a prosecutor has knowingly relied upon false testimony . . . must be distinguished from the use of a witness who has made prior inconsistent statements under oath, particularly where the defendant is aware of those statements." *Ladabouche*, 146 Vt. at 282, 502 A.2d at 855; accord *United States v. Holladay*, 566 F.2d 1018, 1019 (5th Cir. 1978) ("Presentation of a witness who recants or contradicts his prior testimony is not to be confused with eliciting perjury."). Thus, it was not a due process violation for the State to put the witness on the stand, despite the fact that he gave testimony at his deposition that differed in part from his prior sworn statement. Defendant's argument that "the State had every reason to believe" that the witness would testify consistent with his deposition and contrary to his initial statement to the police is unavailing and does not convert anticipation into legal knowledge.

¶ 16. Finally, what defendant claims was "false" testimony — testimony that differed from the witness's prior sworn statement, most significantly that the victim was not intoxicated and consented to having sex — challenged the credibility of the State's main witness. Presumably because of this, defendant claims prejudice, not from the effect of the "false" testimony itself, but from the fact that the State challenged this testimony (and thus the witness's credibility on the consent and intoxication issues), thereby bolstering the victim's credibility. Impeaching a witness, however, even a party's own witness, is simply not the same as misleading the jury and therefore is not a due process violation under *Ladabouche* and *Napue*. See V.R.E. 607 ("The credibility of a witness may be attacked by any party, including the party calling him.").

¶ 17. Defendant's further arguments are unavailing. He contends that by calling a witness the State intended to impeach, the State "sought to discredit [the witness's] testimony, to make him a liar" rather than to bolster its own case. This argument ignores the fact that the witness corroborated key pieces of the State's case, including discussions between defendant and the witness that related to the events of the evening in question. Taken to its logical conclusion, defendant seems to suggest that the State be limited to using only witnesses whose testimony is uniformly consistent or quietly accept any inconsistencies which may arise. This is essentially the inverse of the standard we articulated in *Ladabouche* and the Supreme Court announced in *Napue*, and it is not a standard we will adopt.

*Affirmed.*