*Note:  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-338

MARCH TERM, 2016

| | | |
|---|---|---|
| Abigail Gilson | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Bennington Unit, |
| v. | } | Family Division |
| | } | |
| | } | |
| Jeremy Hrbek | } | DOCKET NO. 124-7-15 Bnfa |

Trial Judge: David A. Howard

In the above-entitled cause, the Clerk will enter:

Defendant appeals a final relief-from-abuse (RFA) order.  On appeal, defendant argues that the evidence was insufficient to support the court's findings that defendant stalked plaintiff and that there is a danger of further abuse.  We affirm.

The parties were formerly in a relationship.  In July 2015, plaintiff filed a request for a RFA order against defendant, stating that defendant would not cease contacting her, and attaching various emails from defendant in support of the petition.  The court held a final hearing in August 2015.  Plaintiff testified to the following.  After her relationship with defendant ended in May 2014, he sent her a "barrage of e-mails," accusing her of cheating during their relationship.  Defendant threatened to post damaging information to her work Facebook page if she did not meet with him.  Plaintiff spoke to defendant, told him her relationship with her new boyfriend, now husband, started after her relationship with defendant, and asked him to leave her alone.  Defendant proceeded to investigate the new boyfriend and wrote to plaintiff about him. He described details that indicated to plaintiff defendant had been watching her house and her new boyfriend's house.  Plaintiff was on the town planning commission and she saw defendant waiting outside a meeting and then found a note from him on her car.  Defendant also left a box on her doorstep with a note accusing her of cheating.  Plaintiff stated that she was home at the time and seeing him approach the house made her "really frightened."  Defendant also began to contact plaintiff's new boyfriend, including texting him that "you better not expect to help a woman bury a man without getting buried yourself."  In July 2015, defendant again emailed her, accusing her of cheating and threating to post items to the Internet to undermine her career as an author.  Plaintiff described habitually locking doors and feeling extremely uneasy out of fear of defendant.

Defendant also testified.  He claimed that he was only at plaintiff's house once when invited and had been at her neighbor's house once.  When asked about why he had sent plaintiff so many emails, he responded that ending the relationship was "hard" and he thought she had cheated on him.  He stated that the text message he had sent to plaintiff's husband was meant to be metaphorical and he did not mean anybody was going to be buried in a hole.  He admitted to writing on her Facebook page, but claimed it was not slander.  Neither party entered any exhibits into evidence.

Based on the evidence, the court found that plaintiff had demonstrated by a preponderance of the evidence that defendant had engaged in stalking—that is, a course of conduct that would cause a reasonable person to fear bodily injury. The court found that there was sufficient evidence for a person to reasonably fear that defendant's conduct would escalate given the length of time defendant had persisted in contacting plaintiff, the number of emails, and the obsession with proving plaintiff's infidelity, including going to her new husband's new home. The court issued a final order, finding that defendant had stalked plaintiff and prohibiting defendant from abusing, stalking, or contacting plaintiff. Defendant filed this appeal.

We review the trial court's factual findings "in the light most favorable to the prevailing party below, disregarding the effect of any modifying evidence, and we will not set aside the findings unless they are clearly erroneous." Coates v. Coates, 171 Vt. 519, 520 (2000) (mem.) (quotation omitted). Because the family court "is in a unique position to assess the credibility of witnesses and weight the strength of evidence" this Court reviews "the family court's decision to grant or deny a protective order only for an abuse of discretion, upholding its findings if supported by the evidence and its conclusions if supported by the findings." Raynes v. Rogers, 2008 VT 52, ¶ 9, 183 Vt. 513.

On appeal, defendant argues that there is insufficient evidence to demonstrate that he stalked plaintiff. In support, defendant retells his version of the facts and attaches several emails. These emails and much of defendant's factual narrative are facts that were not entered below. The record on appeal is limited to the evidence and exhibits filed in the trial court. V.R.A.P. 10(a). Therefore, this Court will not consider the facts or the exhibits defendant has submitted to this Court that were not filed with the trial court. See In re Estate of Perry, 2012 VT 9, ¶ 13, 191 Vt. 589 (mem.) (striking affidavits submitted on appeal that were not filed with trial court).

Stalking is defined in 12 V.S.A. § 5131(6) as:

> a course of conduct which consists of following or lying in wait for
> a person, or threatening behavior directed at a specific person or a
> member of the person's family, and:
>   (A) serves no legitimate purpose; and
>   (B) would cause a reasonable person to fear for his or her safety
> or would cause a reasonable person substantial emotional distress.

Defendant contends that his behavior did not meet this definition because he did not threaten or harm plaintiff or her family, and, although he did communicate with her via email, there was a significant break in the communication prior to his email in July 2015 and plaintiff's application for the RFA order.

Viewing the evidence in the light most favorable to the prevailing party and limiting our review to the evidence submitted below, we conclude that there was sufficient evidence to demonstrate all three elements of stalking. See State v. Hinchliffe, 2009 VT 111, ¶ 18, 186 Vt. 487 (setting forth elements of stalking). Defendant engaged in a course of conduct that included following, lying in wait, and threatening behavior. Defendant had been contacting plaintiff for over year after their relationship ended even after she asked him to stop. He was fixated on his suspicion that she had cheated on him and sent her numerous emails threatening to make embarrassing public disclosures about her. He knew facts about her and her new husband, which indicated that he must have been observing their homes and he showed up at public places where he knew plaintiff would be. He left items for her at her home and on her car, indicating he had been at those places.

Further, defendant's behavior served no legitimate purpose. While defendant provides various explanations in his appellate brief for his continued contact with plaintiff and her husband, his visits to her house, and his presence at the planning commission meeting, this evidence was not entered below and we do not consider it.

Finally, there was sufficient evidence to demonstrate by a preponderance of the evidence that defendant's conduct would cause a reasonable person to fear for her safety. While defendant did not make overt threats of violence, this is not necessary to demonstrate that a reasonable person could have such fear. Obsessive behavior, after warnings to stop, can cause a reasonable person to fear escalation to physical violence. See State v. Ellis, 2009 VT 74, ¶ 26, 186 Vt. 232 (acknowledging that obsessive behavior without threats or attempted acts of violence could cause reasonable person to fear). Here, defendant sent plaintiff numerous emails over an extended period of time and even after plaintiff asked him to stop. His contact was obsessively focused on his suspicions of infidelity. Further, plaintiff expressed fear of defendant and what he would do next. While plaintiff's statement of fear is not determinative, it is relevant to demonstrating on how a reasonable person in plaintiff's position would feel. See Hinchliffe, 2009 VT 111, ¶¶ 21-22 (explaining that even though State must not prove victim actually feared bodily harm, victim's subjective fear is relevant). This was sufficient to support the court's finding that a reasonable person in plaintiff's position would have feared for her safety. Cf. Ellis, 2009 VT 74, ¶ 29 (concluding facts were insufficient to demonstrate that obsessive behavior would cause a reasonable person to fear insofar as interactions all occurred in public places, defendant discontinued contact after plaintiff requested, and plaintiff did not express subjective fear).

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

3