**VERMONT SUPREME COURT**
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      24-AP-288

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

MARCH TERM,   2025

| | |
|---|---|
| Violet Nichols v. Robert Lafayette* | } APPEALED FROM: |
| | } Superior Court, Chittenden Unit, |
| | ] Civil Division |
| | } CASE NO. 24-ST-00961 |
| | Trial Judge: Samuel Hoar, Jr. |

In the above-entitled cause, the Clerk will enter:

Defendant appeals a civil division no-stalking order finding that he followed and threatened plaintiff and ordering him to stay away from her and her children.  On appeal, defendant argues that the evidence was insufficient to establish a course of conduct, his actions were protected speech, he was not provided sufficient prior notice of the allegations against him, the judge was biased, and the stalking order's conditions were overly broad.  We affirm.

At all relevant times, plaintiff was the superintendent of the South Burlington school district and defendant was a parent of two children in the district.  Plaintiff filed for an order against stalking alleging that defendant had been sending her threatening and harassing emails and calls for six months.  The court granted a temporary order and then held a contested hearing on the request.  Defendant was provided with advance notice of the hearing.

At the hearing, plaintiff testified about defendant's behavior.  She stated that she was concerned for her safety and that of her family.  She testified that since January 2024, defendant had been threatening and harassing her through email and by telephone.  She indicated that at a school board meeting in February 2024, defendant attended, was agitated, and threatened her physical safety by stating that he hoped she got hit by a car.  She stated that defendant emailed her daily, sometimes multiple times a day, and called her office with such frequency that staff were afraid to be at work.  She explained that some emails were lengthy and included profanities, threats, and intimidating language.  She indicated that defendant had filed numerous suits against her.  She testified that defendant obtained her personal cell phone number that is not publicly listed and in September 2024 left a voicemail, indicating that because his family was suffering, hers would too, and listing her family members by name.  Plaintiff stated that she had altered her daily patterns to protect herself and her family, and that the harassment impacted her ability to do her job or live without fear.  She explained that she had a safety plan and did not communicate directly with defendant, instead directing all communication through her attorney.

Defendant also testified. He stated that he had never spoken directly to plaintiff or made any actionable threat. He argued that his communications were legally protected because he was advocating for his children to a public official. Defendant admitted that in frustration at the school board meeting he said that he hoped plaintiff got hit by a bus. He argued that it was merely a frustrated comment and not a threat. He stated that he did not intend to threaten plaintiff or cause any physical harm.

The court found by a preponderance of the evidence that defendant engaged in a pattern of threatening behavior and following plaintiff that amounted to stalking based on the following findings. Defendant made threats against plaintiff at the school board meeting in February 2024. Subsequently, defendant contacted plaintiff consistently with a level of persistence that indicated animosity when combined with the earlier threats of harm. Defendant located plaintiff's unlisted telephone number and used that number to make threatening statements, including stating that if his son had to suffer then plaintiff and plaintiff's family would suffer as well. The court found that defendant conducted himself in a way that would make a reasonable person fear for their safety and to suffer emotional distress and indeed plaintiff changed her behavior in response. The court ordered defendant to stay 300 feet away from plaintiff and plaintiff's children. The court provided an exception allowing defendant to go to the school to drop off or pick up his children and attend their athletic events. Defendant appeals.

Defendant first argues that there was insufficient evidence to find that he engaged in a "course of conduct" as required by the anti-stalking statute because he asserts that his actions consisted of one voicemail, there was no repeated behavior, and he did not speak directly with plaintiff.

"Under Vermont's civil stalking statute, a court must impose a no-stalking order if it 'finds by a preponderance of evidence that the defendant has stalked' the plaintiff." Haupt v. Langlois, 2024 VT 3, ¶ 8 (quoting 12 V.S.A. § 5133(d)). Stalking someone includes engaging in a course of conduct that the person knows would cause a reasonable person to either fear for their safety or suffer substantial emotional distress. 12 V.S.A. § 5131(6). Course of conduct is "two or more acts over a period of time, however short, in which a person follows, monitors, surveils, threatens, or makes threats about another person, or interferes with another person's property." Id. § 5131(1)(A). Threatening does not require "an express or overt threat." Id. § 5131(1)(B). We defer to the trial court's factual findings and will affirm if supported by the evidence. Hinkson v. Stevens, 2020 VT 69, ¶ 26, 213 Vt. 32.

Here, plaintiff's testimony is sufficient to support the court's findings that defendant threatened plaintiff on more than one occasion and engaged in a pattern of behavior that amounted to stalking under the statute. Although defendant asserts that there was no repeated behavior, the trial court found two specific instances of threatening behavior: defendant's comment that he hoped plaintiff got hit by a bus during the school board meeting in November 2024 and defendant's voicemail message stating that plaintiff and her family would suffer because his children were suffering. In addition to these specific instances, the court found that defendant contacted plaintiff on a consistent and persistent basis. The court found that these statements would make a reasonable person fear for their safety and indeed plaintiff was fearful and changed her behavior in response to defendant's conduct. Defendant asserts that the evidence was insufficient to show that he made multiple calls to plaintiff or that she had a reasonable fear for her safety. The trial court acted within its discretion in crediting plaintiff's testimony and on appeal "our role in reviewing findings of fact is not to reweigh evidence or to make findings of credibility de novo." Mullin v. Phelps, 162 Vt. 250, 261 (1994).

2

Defendant likens this case to State v. Ellis, 2009 VT 74, ¶¶ 30-32, 186 Vt. 232, in which this Court reversed a conviction of misdemeanor stalking, concluding that the defendant's behavior of following another high school student in public areas did not amount to stalking because there were no threats or attempted acts of violence, and the actions would not cause a reasonable person to fear unlawful restraint. In contrast, here, the court found defendant did make threats against plaintiff and defendant's actions caused plaintiff to reasonably fear for her safety.

Defendant next argues that his behavior was tied to his lawful advocacy, and that the order violated his First Amendment protections to criticize a public official. Although defendant asserts that he was engaging in constitutionally protected speech, there is no First Amendment right to engage in true threats.[*] See State v. Noll, 2018 VT 106, ¶ 22, 208 Vt. 474 (stating that true threats "are not constitutionally protected"). Regardless of whether plaintiff is a public official, the First Amendment does not entitle defendant to engage in threatening behavior. Defendant's actions here went beyond expressing criticism or lawful advocacy; the court found that defendant threatened plaintiff and her family and that in the context of defendant's other behavior, plaintiff reasonable feared for her safety. See id. ¶¶ 37-39 (explaining that true threats include actions that would objectively cause a reasonable person familiar with the context of the communication to interpret it as a "threat of injury" (quotation omitted)). This behavior is not protected speech, and therefore there was no First Amendment violation.

Defendant also argues that he was denied due process because he did not have prior notice that his behavior was unwelcome. Defendant asserts that the hearing was the first time that plaintiff told him that his communications were unwelcome and therefore there was no means for him to understand that his advocacy efforts were being interpreted as harassment. To obtain an order against stalking, a plaintiff is not required to prove that the defendant was on notice that the behavior was unwelcome. Individuals do not have a right to engage in threatening behavior. To the extent defendant claims there was insufficient process because he did not have adequate notice of plaintiff's concerns regarding his communication, the record reflects that he received sufficient process here. The basic tenets of due process are notice and an opportunity to be heard. Rich v. Montpelier Supervisory Dist., 167 Vt. 415, 420 (1998). Here, defendant was provided with notice of the hearing and a copy of plaintiff's complaint and affidavit, and fully participated in a hearing before the court.

Defendant claims that the court was biased against him and engaged in judicial misconduct by accepting plaintiff's testimony. The fact that the trial judge credited plaintiff's testimony is not evidence of bias. See Ainsworth v. Chandler, 2014 VT 107, ¶ 16, 197 Vt. 541 (explaining that adverse rulings do not demonstrate bias and there must be evidence of improper motivation). The trial court had discretion in assessing the credibility and weight to give to the evidence. Moreover, defendant did not raise this issue below and therefore has not properly preserved it for appeal. See State v. Hinchliffe, 2009 VT 111, ¶ 31, 186 Vt. 487 (declining to reach argument not raised before trial court).

---

[*] The cases defendant cites regarding fighting words are not applicable in this case, where plaintiff alleged that defendant stalked her by engaging in threatening behavior. See, e.g., State v. Tracy, 2015 VT 111, ¶ 35, 200 Vt. 216 (defining fighting words as those "that are likely to so provoke the average listener that an affray will ensue" and concluding that defendant's outburst did not amount to disorderly conduct).

Finally, defendant claims that the stalking order is overly broad and retaliatory because it infringes on his ability to engage in advocacy efforts and extends to plaintiff's children whom defendant claims he does not know. Once a party has established a basis for an order against stalking, the court "shall order the defendant to stay away from the plaintiff or the plaintiff's children" or make "any other order it deems necessary to protect the plaintiff." 12 V.S.A. § 5133(d). An order against stalking may prohibit "otherwise legitimate conduct if necessary to protect plaintiffs." Swett v. Gates, 2023 VT 26, ¶ 28, 218 Vt. 76 (quotation omitted). Here, having found that defendant engaged in threatening behavior, the court was empowered to restrict defendant's behavior, even if those restrictions precluded defendant from engaging in what would otherwise be legitimate conduct. Given plaintiff's testimony that defendant named her children in his voicemail threat, it was within the court's discretion to limit defendant's conduct with the children as well as plaintiff. Contrary to being overbroad, the court here included an exception to the no-contact order, allowing defendant to drop his children at school and attend their sports events.

Affirmed.

BY THE COURT:

_____
Harold E. Eaton, Jr., Associate Justice


_____
William D. Cohen, Associate Justice


_____
Nancy J. Waples, Associate Justice