*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2014-028

SEPTEMBER TERM, 2014

| | |
|---|---|
| In re Roger Clinton Brown | } APPEALED FROM: |
| | } |
| | } Superior Court, Windham Unit, |
| | } Civil Division |
| | } |
| | } DOCKET NO. 654-12-10 Wmcv |
| | |
| | Trial Judge: John P. Wesley |

In the above-entitled cause, the Clerk will enter:

Petitioner appeals from the superior court's summary judgment ruling dismissing his petition for post-conviction relief (PCR). We reverse the court's ruling and remand the matter for further proceedings.

Petitioner was convicted by a jury in February 2009 of engaging in lewd and lascivious conduct with his step-granddaughter, who was between eight and ten years old at the time the charged conduct occurred. This Court affirmed the conviction in November 2010. See State v. Brown, 2010 VT 103, 189 Vt. 88. In December 2012, petitioner filed this PCR petition, alleging that his trial counsel was ineffective for: (1) eliciting testimony from petitioner's wife and doctor that confirmed the victim's testimony describing the distinctive physical appearance of petitioner's penis; (2) failing to proffer evidence that would have established an innocent explanation for the victim's knowledge of the physical appearance of petitioner's penis; and (3) failing to object to the investigating officer's testimony that petitioner had been instructed by his attorney not to talk to police.

In response to the parties' cross-motions for summary judgment, the superior court denied petitioner's motion, granted the State's motion, and dismissed the petition. The court determined as a matter of law that petitioner failed to present evidence demonstrating that the performance of petitioner's trial attorney fell below a standard of reasonable professional representation under prevailing norms. Essentially, the court rejected the first two claims of ineffective representation because the court concluded that the trial strategy pursued by defense counsel was a viable one, and was apparently endorsed by petitioner, and further rejected the third claim because the challenged testimony did not amount to an unlawful comment on petitioner's right to remain silent. On appeal, petitioner reiterates the arguments he made to the trial court.

We review the court's summary judgment decision de novo, applying the same standard as the trial court. Sabia v. Neville, 165 Vt. 515, 523 (1996). Summary judgment is appropriate when there are no genuine issues of material fact, and any party is entitled to judgment as a matter of law. V.R.C.P. 56(a), (f).

The summary judgment record includes the following undisputed facts. In her opening argument at trial, defense counsel described to the jury how witnesses would contradict the victim's description of petitioner's penis. The victim was the first witness called at trial and testified that petitioner's penis "was darker than his regular skin" and "uncircumcised." During cross-examination of the victim, defense counsel got the victim to confirm that "the skin on his penis was darker than the skin on the rest of his body." When defense counsel asked if there were any other unusual marks on petitioner's penis, the victim stated that "[t]here was a lighter spot near the head of the penis."

The State called petitioner's doctor to testify at trial, and defense counsel did not object. When asked on direct examination if there was anything distinctive about petitioner's penis, petitioner's doctor testified that petitioner had a condition called vitiligo, which destroys pigment and creates a very distinctive difference between the light skin resulting from the condition and the surrounding skin. The doctor stated that the condition was located on the left side of petitioner's penis towards the base of the penis extending a little bit on the scrotum. On cross-examination, defense counsel elicited testimony from the doctor emphasizing that the area affected by the condition was not merely lighter, but completely white.

In the defense case, defense counsel questioned petitioner's wife on direct. In response to questions from counsel, she corroborated the doctor's testimony, stating that the non-pigmented area was on "the middle" of the left side of petitioner's penis "going back toward the body," and that it was "very light" compared to the "very dark" surrounding skin.

During closing argument, defense counsel argued that the victim's description of petitioner's penis changed from month to month and year to year—that she first merely described it as dark but then stated, after the State had interviewed petitioner's doctor, that there was a white spot at the top of the penis. Defense counsel emphasized that the victim's description both before and during the trial did not match "in the slightest" that of petitioner's doctor, asserting that the victim "has never seen [petitioner's] penis" and did not know what it looked like. It was also undisputed that defense counsel was aware that as a toddler, the victim's training potty was located in a bathroom that was used by petitioner, and that the victim may have seen petitioner's penis in that context. Whether this information translated into any admissible evidence was in dispute.

In connection with the cross-motions for summary judgment, petitioner submitted an expert affidavit of a criminal defense attorney who opined that defense counsel's performance in the trial fell below the standard of practice in Vermont. He explained that counsel should not have permitted the State to adduce, and then herself adduced, evidence corroborating the victim's description of petitioner's penis. Rather, counsel should have invoked the doctor-patient privilege to prevent petitioner's doctor from testifying, should not have questioned petitioner's wife on direct examination about the skin condition, and should have offered evidence that the victim likely saw her grandfather's penis under innocent circumstances years before the alleged abuse, and likely remembered it—providing an innocent explanation for her ability to describe her grandfather's penis. Finally, petitioner's expert opined that petitioner's trial counsel had fallen below the prevailing standard of professional practice when she failed to seek a mistrial after a police officer testified that petitioner had been advised to remain silent by his attorney and exercised that right.

2

The State presented an uncontroverted affidavit from petitioner's trial counsel stating that: (1) before trial, petitioner informed her that the victim's description of his penis was inaccurate and that he wanted to pursue a defense at trial proving her description was inaccurate; (2) petitioner further informed her that his wife and doctor could provide testimony proving that the victim's description of his penis was inaccurate; (3) she spoke to petitioner's wife and doctor, and both provided descriptions of petitioner's penis that contradicted, at least in part, the victim's description; (4) she concluded that presenting the wife's and doctor's testimony was important because otherwise the victim's description of defendant's penis would go unchallenged, although she recognized the risk in that their testimony would confirm the victim's testimony that petitioner's penis was uncircumcised; (5) after consulting with petitioner, who was in favor of presenting the testimony of his wife and doctor to contradict the victim's testimony, she decided to present their testimony to the jury; and (6) she informed the State, which eventually subpoenaed the doctor to testify in its case-in-chief. In addition, trial counsel testified by affidavit that petitioner did not support making an argument to the jury that the victim had seen his penis, but under innocent circumstances.

The State also presented an expert affidavit of its own. The State's expert opined that trial counsel reasonably made the judgment to challenge the accuracy of the victim's description of petitioner's penis on the basis of evidence that the victim's description was inaccurate. Moreover, the expert opined that the risks inherent in the "innocent explanation" evidence petitioner now says trial counsel should have adduced would have outweighed any benefit. Finally, the expert opined that trial counsel was not unreasonable in failing to seek a mistrial after a police officer testified that he had been told by petitioner's trial counsel that he could not speak to the detective. Given the evidence of emphatic and repeated denials by petitioner when speaking with to the first investigating officer, and the fact that the subsequent request by an officer to speak with petitioner was after the arraignment, trial counsel could have reasonably concluded that the court would reject a motion for mistrial.

A PCR petitioner claiming ineffective assistance of counsel must first "show by a preponderance of the evidence that counsel's performance fell below an objective standard of reasonableness informed by prevailing professional norms." In re Dunbar, 162 Vt. 209, 212 (1994). This is a "heavy burden" for a petitioner to meet because we give trial counsel "a great deal of discretion in decisions regarding trial strategy." In re Kirby, 2012 VT 72, ¶ 11, 192 Vt. 640 (mem.) (recognizing "a strong presumption of reasonableness in an attorney's performance"). We do not measure the reasonableness of a particular trial strategy by whether it succeeded or failed; rather, we assess an attorney's decision to pursue a given legal theory for reasonableness under "all the circumstances, applying a heavy measure of deference to counsel's judgments.' " Id. (quoting Strickland v. Washington, 466 U.S. 668, 691 (1984)). In adopting this standard, we have quoted the following reasoning from the U.S. Supreme Court:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance . . . .

In re Pernicka, 147 Vt. 180, 183 (1986) (quoting Strickland, 466 U.S. at 689 (citations omitted)).

Notwithstanding petitioner's heavy burden under this standard, we conclude that the superior court erred by granting the State summary judgment in this case. The summary-judgment record featured dueling affidavits by longtime criminal-defense attorneys on the question of whether, given the facts of this case, counsel's performance fell below the prevailing standard of professional practice.

We recognize that the affidavit of petitioner's expert was dated more than a month before the affidavit of petitioner's trial counsel, and thus his expert may not have been aware of trial counsel's testimony that petitioner advocated the defense eventually adopted by his trial counsel. But the expert opinion remains part of the summary-judgment record, and creates a triable dispute. If further discovery changes the lay of the land in terms of petitioner's expert's opinion, the analysis might be different.

We also recognize that the superior court concluded that the testimony adduced by petitioner's attorney did not entirely corroborate the victim's description of petitioner's penis but, rather, was reasonably designed to discredit the victim's testimony. Nevertheless, there remains a dispute about the extent to which the descriptions were corroborative such that adducing the testimony fell below the prevailing norms of effective representation. Courts are not empowered to try issues of fact on summary judgment, and thus must "examine the affidavits or other evidence simply to determine whether a triable issue exists rather than for the purpose of resolving the issue." In re Lowry, 2013 VT 85, ¶ 10 (quoting Berlin Dev. Assocs. v. Dep't of Soc. Welfare, 142 Vt. 107, 111 (1982)) (reversing summary judgment where factual disputes remained over whether defense counsel anticipated consequences of proposing that witness invoke Fifth Amendment privilege and whether counsel apprised petitioner of risks that could result from this strategy—both of which had critical impact on whether counsel's performance was objectively reasonable).

Reversed and remanded.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

4