## State of Vermont v. James Kelley

[664 A.2d 708]

No. 93-612

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed February 17, 1995

*M. Patricia Zimmerman,* Windsor County State's Attorney, White River Junction, for Plaintiff-Appellee.

*Robert Appel,* Defender General, and *Henry Hinton,* Appellate Defender, Montpelier, for Defendant-Appellant.

**Gibson, J.** Defendant appeals his conviction of first-degree murder claiming that the trial court erred by refusing to instruct the jury on a lesser-related offense and by admitting evidence of his conduct on the day of the murder. He also asks us to vacate his sentence of life without parole. We affirm.

At approximately 5:00 p.m. on August 13, 1992, Jeffrey Wyman was shot to death while he sat in his parked truck in Chester, Vermont. Witnesses who lived near the murder scene said they had seen a red Pontiac Fiero in the area at the time of the shooting. Jason Shuffleburg owned a red Pontiac Fiero in which he and defendant had been riding together on August 13.

Defendant arrived at Shuffleburg's apartment about 10:00 a.m. on the day of the shooting. They spent the morning drinking beer both at the apartment and while riding in Shuffleburg's car. Sometime after noon, they left the apartment to purchase more beer, stopping

first at the Springfield Shopping Plaza so defendant could borrow money from his wife. Upon leaving the grocery store where his wife worked, defendant began shouting at several teenagers who were gathered near Shuffleburg's car. Before a more serious altercation could ensue, Shuffleburg calmed defendant, and the two men got back into the car and left the Plaza.

After leaving the Plaza, defendant and Shuffleburg returned to Shuffleburg's apartment where they discussed a plan to rob a poker game in Windsor, Vermont. They left the apartment with Shuffleburg's .32 automatic pistol. Fearing trouble at the poker game, Shuffleburg suggested that they rob a store in Chester, Vermont instead. Defendant agreed. Defendant entered the store armed with the pistol, but aborted the robbery because there were too many customers inside the store. He later reentered the store but abandoned the plan because there were again too many people present. He got back into Shuffleburg's car and the two drove away.

The two men soon noticed Jeffrey Wyman's truck parked in a pull-off area on Dean Brook Road. After passing the truck, defendant told Shuffleburg to turn the car around. Shuffleburg testified that defendant wanted to show him how crazy he was. Shuffleburg turned the car around and pulled up to Wyman's truck. Taking the pistol, defendant approached Wyman. He asked Wyman, who was alone in the truck, if he had any beer or marijuana, and then shot him in the head. Defendant returned to the car and the two men left.

Eventually, defendant and Shuffleburg were apprehended. Shuffleburg confessed to the murder but later recanted and implicated defendant as the triggerman. Defendant was tried by jury and convicted of first-degree murder. This appeal followed.

I.

Defendant first claims error in the court's instructions to the jury. In his proposed instructions, during the charge conference, and after the jury retired, defendant requested an instruction on the crime of accessory after the fact. See 13 V.S.A. § 5 (defining accessory after the fact). He argued that an accessory after the fact was a lesser-included offense of first-degree murder and that the evidence would support such a verdict. The court rejected the request, noting that the elements comprising the offense of accessory after the fact are not contained in the offense of first-degree murder. See *State v. Williams*, 154 Vt. 76, 82, 574 A.2d 1264, 1267 (1990) (lesser-included offense is composed of some but not all elements of greater offense, and has no elements not included in greater offense).

On appeal, defendant claims that an instruction on accessory after the fact was proper because it was a lesser-*related* offense of first-degree murder based on the evidence in the case. We do not consider this claim on appeal because defendant did not object to the court's instructions on this ground below. *State v. Roberts,* 154 Vt. 59, 72, 574 A.2d 1248, 1254 (1990); V.R.Cr.P. 30.

## II.

Defendant also challenges the admission of testimony relating to three incidents involving defendant which occurred just hours before the murder. He contends that the testimony was improper character evidence proscribed by V.R.E. 404(b). We will reverse the trial court's decision to admit this evidence only if the court withheld or abused its discretion, see *State v. Powers,* 163 Vt. 98, 100, 655 A.2d 712, 713 (1994), and a substantial right of defendant was affected by the alleged error. V.R.E. 103(a).

The evidence on which defendant bases his claim was testimony that defendant (1) planned to rob a poker game with Shuffleburg, (2) engaged in a verbal altercation with teenagers in the Plaza, and (3) shouted menacingly at a person passing by his wife's apartment. All three incidents occurred within hours prior to the murder. The State offered this evidence to establish defendant's state of mind and the events leading up to the shooting. Defendant objected, arguing that the evidence was irrelevant and prejudicial, and was improper propensity evidence, in contravention of Rule 404(b). We disagree.

Rule 404(b) prohibits the admission of "other bad act" evidence to prove that the defendant had a propensity to commit the act for which he is charged. See *State v. Jones,* 160 Vt. 440, 444, 631 A.2d 840, 844 (1993). Such evidence is admissible for other purposes, however, among them proof of motive, intent or identity. V.R.E. 404(b). Like any evidence, "other bad act" evidence offered for a permissible purpose may be excluded if the danger of unfair prejudice substantially outweighs the probative value of the evidence. *Jones,* 160 Vt. at 444, 631 A.2d at 844; V.R.E. 403. The probative value of "other bad act" evidence often depends on the proximity in time of the crime charged and the other acts, and their similarity. *State v. Ashley,* 160 Vt. 125, 126, 623 A.2d 984, 985 (1993).

Here, the other acts occurred only hours before the murder, giving this evidence great probative value. Defendant had engaged in an escalating course of violent behavior, which culminated in Wyman's

death. Thus, the other acts provide the context in which the shooting took place. See *State v. Searles*, 159 Vt. 525, 529, 621 A.2d 1281, 1284 (1993); cf. *Carter v. United States*, 549 F.2d 77, 78 (8th Cir. 1977) (evidence of other criminal activity admissible to show context in which crime charged was committed). Indeed, defendant's actions throughout the day were necessary to explain to the jury defendant's motive for the murder. Cf. *State v. Parker*, 149 Vt. 393, 399, 545 A.2d 512, 516 (1988) (defendant's prior sexual abuse of one child relevant to explain motive for his abuse of second child). Defendant's earlier random and aggressive conduct helps explain an otherwise random and bizzare act. After failing to follow through with his plans to rob the poker game and the store, defendant wanted to show Shuffleburg how "crazy" he was by killing Wyman. Further, this evidence was probative of defendant's state of mind just prior to the shooting. Whether defendant's state of mind prior to the killing carried over to the killing itself was a question for the jury to resolve. See *Commonwealth v. Murphy*, 425 A.2d 352, 355 (Pa. 1981). The prior incidents and the shooting occurred within a few hours, thus making the evidence highly probative and admissible so long as defendant was not unfairly prejudiced by its admission.

■ Evidence tending to inculpate the defendant always carries with it some prejudice. See *Jones*, 160 Vt. at 446, 631 A.2d at 844. Rule 403 excludes only unfairly prejudicial evidence if such prejudice substantially outweighs the probative value. V.R.E. 403. Evidence is unfairly prejudicial if its primary purpose or effect is to provoke horror or punish the defendant, or to appeal to the jury's sympathies. *Jones*, 160 Vt. at 445, 631 A.2d at 844. We find that the trial court did not abuse its discretion in admitting this evidence of other acts. The evidence was not offered for the purpose of eliciting jury sympathy or horror, nor was it likely to have that effect. The evidence had substantial probative value and was properly admitted.

■ Defendant also claims that testimony regarding the poker game robbery was improperly admitted because the State failed to provide him notice of its intent to use that evidence prior to trial. See V.R.Cr.P. 26(c) (State must give defendant notice seven days prior to trial of its intent to offer evidence of other bad acts governed by V.R.E. 404(b)). The purpose of this notice requirement is to allow the defendant an opportunity to file a motion in limine or to otherwise respond to the State's offer prior to trial. *State v. Houle*, 162 Vt. 41, 45, 642 A.2d 1178, 1181 (1994). In this case, the court erroneously

concluded that admission was proper because the defense knew about the plan through discovery materials it possessed. See *id.* Nevertheless, we find the error harmless because defendant filed a motion in limine prior to trial to exclude this evidence, and the court considered and ruled on the motion before trial began. Hence, the purpose of V.R.Cr.P. 26(c) was fulfilled.

## III.

Finally, defendant requests that we vacate his sentence of life without the possibility of parole, the maximum sentence possible in Vermont. The court has wide discretion to determine and impose sentence. *State v. Neale,* 145 Vt. 423, 435, 491 A.2d 1025, 1033 (1985). Absent exceptional circumstances, we will defer to the sentencing court so long as the sentence is within the statutory limits. *State v. Cyr,* 141 Vt. 355, 358, 449 A.2d 926, 927 (1982).

The permissible penalties for first-degree murder are set forth in 13 V.S.A. § 2303. The statute requires the court to allow the parties time to present arguments relating to aggravating and mitigating factors relevant to a permissible sentence. *Id.* § 2303(c). Section 2303(d) provides a list of aggravating factors for the court to consider. Among the factors is whether the murder victim was "particularly weak, vulnerable or helpless." *Id.* § 2303(d)(4). In this case, the court found that the victim was particularly vulnerable because he was sitting alone in a parked car with no opportunity to defend himself or to escape.

Defendant claims that the court used factor (4) improperly in determining his sentence. In support of his argument, defendant cites authority defining "vulnerability" as some special characteristic of the victim that is not necessarily shared by other crime victims, such as extreme youth or advanced age. See, e.g., *State v. Harwell,* 515 N.W.2d 105, 110 (Minn. Ct. App. 1994) (victim's young age and reduced physical capacity while defendant held her down made victim particularly vulnerable); *State v. Jones,* 801 P.2d 263, 268 (Wash. Ct. App. 1990) (victim may be vulnerable due to extreme youth, advanced age, ill health or disability). Defendant further argues that the special characteristic must be known to the perpetrator, who must exploit it to accomplish the crime. Cf. *Jones,* 801 P.2d at 268 (for victim's vulnerability to justify exceptional sentence, defendant must know of vulnerability and vulnerability must be substantial factor in accomplishing crime).

■■ We do not find the authority defendant cites persuasive in interpreting 13 V.S.A. § 2303(d)(4). The Minnesota and Washington statutes construed in *Harwell* and *Jones* set forth the factors that make a victim "particularly vulnerable" within the meaning of those statutes. See Minn. Stat. Ann. app. § 244 II.D.2.b(1) (West 1992) (victim "particularly vulnerable due to age, infirmity, or reduced physical or mental capacity"); Wash. Rev. Code Ann. § 9.94A.390(2)(b) (West 1988 & Supp. 1995) (victim "particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health"). In contrast, § 2303(d)(4) does not limit the term "vulnerability." Section 2303(d)(4) permits the trial court to use its discretion to determine whether, under the particular facts of the case and based on the evidence, the victim was particularly vulnerable. We find nothing illogical or contrary to the plain language of § 2303(d)(4) to characterize as vulnerable a person sitting alone in his car on the side of the road with a gun pointed to his head. The trial court did not abuse its discretion in applying subsection (d)(4) to these facts.

*Affirmed.*