2010 VT 103

# State of Vermont v. Roger Clinton Brown

[15 A.3d 107]

No. 09-293

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed November 19, 2010

*David W. Gartenstein*, Windham County Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates*, Barre, for Defendant-Appellant.

¶ 1. **Reiber, C.J.** Following a jury trial, defendant was convicted of the sexual assault of his step-granddaughter C.M. under 13 V.S.A. § 2602. On appeal, he argues that the trial court abused its discretion by admitting evidence that he used a paddle to discipline C.M. and her sister. Defendant claims this evidence is irrelevant and its probative value is outweighed by undue prejudice. He further contends that the trial court gave an insufficient limiting instruction regarding the paddle evidence. We affirm.

¶ 2. The evidence presented at trial may be summarized as follows. In January 2007, the victim C.M. disclosed that defendant, her step-grandfather, sexually abused her when she and her sister A.M. were sleeping over at his house. C.M. reported that the incident took place when she was sleeping in her room while A.M. slept on the couch in the living room. C.M. heard footsteps coming down the hall, then defendant entered the room and put his hands under her t-shirt. He moved his hands down from her chest to her stomach and panty line. When defendant's hand reached the waistline of C.M.'s panties, C.M. ran from the room and went to sleep with her sister. C.M. remembered this incident occurring the last time she slept over at her grandparents' house, which C.M.'s mother testified was in October 2003. Thus, a little over three years passed between the incident and C.M.'s initial disclosure.

¶ 3. In May 2007, four months after her initial disclosure, C.M. disclosed additional instances of sexual abuse to her family and

the police. C.M. reported that defendant would come into her room when she was playing or reading, close the door, and touch her under her shirt and over her panties. C.M. further stated that defendant made her stroke his penis, and that when she would do this his penis was "hard" and one or two times he ejaculated into her hand. C.M. also knew that defendant was uncircumcised and described the unique appearance of his genitals; defendant has a condition called Vitiligo which makes certain portions of his body lighter in color than others.

¶ 4. At trial, defendant suggested C.M. was a child prone to fabrication and repeatedly questioned the long delay between the sexual abuse and her eventual disclosure three years later. In response, the State presented expert trial testimony from Dr. Jan Tyler addressing memory, recall, and other factors that impact the timing of sexual abuse disclosures. Dr. Tyler testified that timing of disclosures by sexual abuse victims can be impacted by things such as threats, coercion, and aggressive treatment by the perpetrator. To demonstrate that these factors influenced the timing of C.M.'s disclosure, the State offered evidence that defendant threatened to hurt her grandmother if C.M. told anyone about the sexual abuse. There was also testimony from several witnesses, elicited by both the State and defendant, that defendant had hit C.M. and her sister with a paddle. It is the introduction of the evidence of paddling that defendant now appeals.

## I.

¶ 5. Defendant contends that the trial court abused its discretion in admitting evidence of his other bad acts, namely paddling C.M. and her sister, as context evidence under Vermont Rule of Evidence 404(b). " 'Our review of the trial court's admission of evidence under Rule 404(b) . . . includes two steps: first, whether the evidence was relevant and material to the cause of action, . . . and if so, whether the evidence was more probative than unfairly prejudicial.' " *State v. Leroux*, 2008 VT 104, ¶ 16, 184 Vt. 396, 965 A.2d 495 (quoting *State v. Laprade*, 2008 VT 83, ¶ 14, 184 Vt. 251, 958 A.2d 1179). "We will reverse the trial court's decision to admit this evidence only if the court withheld or abused its discretion . . . and a substantial right of defendant was affected by the alleged error." *State v. Kelley*, 163 Vt. 325, 328, 664 A.2d 708, 710 (1995) (citation omitted).

¶ 6. We first address defendant's argument that using a paddle to discipline C.M. and her sister was irrelevant. We review the

relevance prong of this analysis under an abuse-of-discretion standard, although it is unclear whether or not defendant properly objected below. Defendant claims that the evidence was neither probative as context evidence nor as evidence to explain C.M.'s delayed disclosure. We conclude, however, that the evidence is relevant to rebut defendant's repeated implications that C.M. fabricated her allegations, which often emphasized the three-year gap between the sexual assault and C.M.'s disclosure.

¶ 7. Our past cases have allowed evidence of prior "bad acts" in sexual assault cases to explain the context of delayed reporting or to refute claims of fabrication. In *State v. Forbes* the defendant was convicted of lewd and lascivious conduct with a child and sexual assault for acts upon his daughter. 161 Vt. 327, 329, 640 A.2d 13, 14 (1993). "The defense attempted to account for the daughter's allegations [of sexual assault] by suggesting that she had fabricated the story" in response to the defendant's threats to send her away to reform school. *Id.* To refute this inference of fabrication, the State offered evidence demonstrating that it was actually the fear of her father's temper that had kept the daughter from coming forward sooner. *Id.* at 330, 640 A.2d at 16. On appeal, the defendant claimed the trial court had abused its discretion by admitting evidence of his temper for this purpose. *Id.* at 329, 640 A.2d at 14. We concluded that under 404(b) "the trial court[] [has] discretion to allow the victim to tell enough of the story to preserve its integrity as a credible one." *Id.* at 333, 640 A.2d at 16. We held that the trial court properly exercised its discretion by admitting defendant's history of violent acts because "evidence of [the] defendant's temper rebutted the inference . . . that his daughter only recently fabricated the allegations of sexual abuse." *Id.* at 334, 640 A.2d at 17. As in *Forbes*, the evidence of paddling rebuts an inference that C.M. has fabricated her story. Expert witness Dr. Jan Tyler testified at trial that the timing of disclosures by sexual abuse victims is often impacted by the extent to which victim is threatened or treated aggressively by the perpetrator. Thus, the paddle evidence is relevant because it helps explain the delay between the sexual assault and C.M.'s reporting of the incident.

¶ 8. Defendant maintains the paddle evidence was not probative because C.M. gave two reasons for her failure to report: "The first was that she felt that as a young child, no one would believe her . . . [and] [t]he second reason was that she claimed [defend-

ant] told her that if she told, he would hurt Nanny." Defendant contends that because C.M. gave an alternate, nonprejudicial reason for her failure to disclose quickly, the second reason was irrelevant and unnecessary surplusage.

¶ 9. As defendant notes in his brief, however, "C.M. claimed that she never told anyone before January 2007 because she did not want anyone to get hurt and that *when she was younger*, she did not think anyone would believe her." (emphasis added). One of C.M.'s reasons explains why she did not disclose "when she was younger"; the other, that she feared someone would be hurt, explained why the delay lasted into later years. C.M.'s testimony regarding her fear that no one would believe her was insufficient on its own to explain the three-year wait, and thus the testimony regarding her fear of violence was probative as to her reasons for delay. Because evidence of the paddling rebuts the inference that C.M. is dishonest and is probative of the reason for the three-year disclosure delay, it is relevant and the trial court did not abuse its discretion by admitting it.

■ ¶ 10. Next, we turn to the question of whether the probative value of evidence of defendant's prior bad acts was outweighed by risk of unfair prejudice. As a threshold matter, we first examine the State's lack-of-preservation claim. This Court has long held that issues not preserved at trial may not be raised on appeal. See, e.g., *State v. Hinchliffe*, 2009 VT 111, ¶ 32, 186 Vt. 487, 987 A.2d 988; *State v. Carpenter*, 170 Vt. 371, 374, 749 A.2d 1137, 1139 (2000); *Bebee v. Steel*, 2 Vt. 314, 316 (1829).

¶ 11. At trial, the defendant made only a qualified objection to the State's admission of the paddle evidence: "Well, if he's able to put a time frame of when it started and when it ended, and how it was related to the alleged touching, but just the fact that she was spanked with a paddle when she was little, because she'd been there from an infant, is far more prejudicial than it is probative of whether or not he committed this crime." Defendant's objection thus raised two intertwined issues: (1) whether the spanking occurred with enough temporal proximity to the sexual assault to be relevant; and (2) whether defendant spanking C.M. with a paddle was probative of the likelihood defendant committed the sexual assault. On appeal, defendant instead argues that the paddle evidence is irrelevant because it is "neither probative as context evidence [n]or as evidence for why C.M. might have

delayed reporting." Defendant's trial objection was not specific or clear enough to preserve his new claim on appeal. See *Hinchliffe*, 2009 VT 111, ¶ 32.

¶ 12. Because the argument was not preserved, we review the lower court's admission of the paddle evidence for plain error. *Laprade*, 2008 VT 83, ¶ 23. To succeed on a claim of plain error, the appellant must show that the judgment below was substantially affected by admission of this evidence. *State v. Burgess*, 2007 VT 18, ¶ 17, 181 Vt. 336, 917 A.2d 528. Defendant has not made that showing here.

¶ 13. "Evidence 'tending to inculpate the defendant always carries with it some prejudice,' . . . as otherwise the prosecution would have no interest in its introduction." *Leroux*, 2008 VT 104, ¶ 21 (quoting *State v. Kelley*, 163 Vt. at 329, 664 A.2d at 711). Rule 403 excludes only unfairly prejudicial evidence, described as "evidence having the primary purpose or effect of provoking horror or punishing the defendant, or appealing to the jury's sympathies." *Id.* (quotation omitted).

¶ 14. Context evidence which tends to place the defendant in a negative light can be admitted as long as the prejudice does not unfairly outweigh its probative value. In *State v. Leroux* the defendant was convicted of sexual assault and argued on appeal that the court improperly admitted evidence about an incident in which he had kicked the complainant in the buttocks. *Leroux*, 2008 VT 104, ¶ 11. Defendant failed to object to admission of this evidence at trial. We affirmed, explaining that although "context evidence in the form of insult and bullying may have cast defendant in a negative light, [it] was not horrific." *Id.* ¶ 21. On these facts the Court found "no cogent reason why a properly instructed jury would unanimously vent such displeasure, or assuage whatever sympathy it might have for complainant, by convicting defendant of assault in the absence of evidence of guilt beyond a reasonable doubt," and that "even assuming prejudice, defendant fail[ed] to show that the influence on the verdict was unduly unfair." *Id.* Similarly, although evidence of paddling may cast defendant "in a negative light," the evidence is not "horrific." We see no reason to believe that a properly instructed jury would be so swayed by this evidence as to convict defendant of sexual assault in the absence of evidence of guilt beyond a reasonable doubt. Further, defendant himself elicited additional evidence at

trial which tended to show that he was violent towards C.M. and others in the family. It was defendant who presented the jury with evidence that he had slapped C.M.'s face and often yelled at her grandmother. The evidence that defendant hit C.M. and her sister with the paddle was no more "horrific" than these pieces of evidence. Introduction of evidence of paddling did not rise to the level of plain error because there is nothing innately horrific in this act and defendant has failed to show that the judgment below was substantially affected by its admission in light of the other evidence presented at trial.

## II.

¶ 15. In defendant's second argument, he challenges the adequacy of the trial court's limiting instruction. At trial, defendant requested the court include a limiting instruction in its jury charge with regards to the evidence of defendant threatening and intimidating C.M. During the charge conference, defendant requested that the instruction make "clear to some degree that whether or not there was a use of a paddle, it was not related in any way to the allegation of the lewd conduct." In response, the trial court included the following limiting instruction in its jury charge:

> The State introduced evidence in this case that defendant may have struck the alleged victim with a paddle. This evidence was introduced in an attempt to explain why the alleged victim may have delayed her disclosure in the case or why she may have been afraid to report the incidents in question. It would not be appropriate for you to infer that if defendant used the paddle on the alleged victim that he must have committed the acts of lewd and lascivious behavior, as well. The evidence was not introduced for that purpose.

Thus, the trial court's limiting instruction took into account the concerns defendant articulated regarding the use of the paddle. Defendant did not object to the limiting instruction after the jury charge.

¶ 16. By failing to object to any portion of the jury instructions after the court charged the jury, the defendant waived the issue of whether the trial court erred in instructing the jury.

See *Hinchliffe*, 2009 VT 111, ¶ 33; see also *State v. Martin*, 2007 VT 96, ¶ 42, 182 Vt. 377, 944 A.2d 867. "To preserve an objection to the jury instructions, defendant must object 'before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.' " *Hinchliffe*, 2009 VT 111, ¶ 33 (quoting V.R.Cr.P. 30). " 'The primary reason for the rule is to give the trial court one last opportunity to avoid an error.' " *Id.* (quoting *State v. Wheelock*, 158 Vt. 302, 306, 609 A.2d 972, 975 (1992). Because defendant failed to object to the limiting instruction at trial he waived the argument. We do not address plain error, because it was not raised on appeal. See *id.* ¶ 34.

*Affirmed.*