NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 73

No. 2018-286

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Criminal Division |
| | |
| Henry Nash | June Term, 2019 |

Michael R. Kainen, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Dawn Matthews, Appellate Defender, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **CARROLL, J.** Defendant appeals drug- and alcohol-related probation conditions arising from his conviction for grossly negligent operation of a motor vehicle. Defendant argues that these conditions are not reasonably related to his crime or to his rehabilitation. He also argues that two conditions—the random drug and alcohol testing conditions—violate Article 11 of the Vermont Constitution and the Fourth Amendment to the United States Constitution and should either be stricken or amended. We conclude that defendant failed to properly preserve his objections to the alcohol-related conditions and to the constitutional question, and we therefore decline to review them for the first time on appeal. We affirm the imposition of the drug condition prohibiting defendant from possessing unprescribed, regulated drugs, because the condition prohibits illegal conduct. However, we strike the random drug testing in Condition M and strike

language related to drug screening treatment from Condition 3 because it is not reasonably related to defendant's circumstances or conviction.

¶ 2.     The following facts are, unless otherwise noted, undisputed and supported by the record. See State v. Ramsay, 146 Vt. 70, 79, 499 A.2d 15, 21 (1985) ("On appeal, defendant bears the burden to show that materially inaccurate information was relied upon by the sentencing court."); Reporter's Notes—1980 Amendment, V.R.Cr.P. 32 ("[T]he [sentencing] court may consider unsworn information from a variety of sources, including the [Presentence Investigation Report] and in-court or out-of-court statements of . . . officials who have had contact with [the defendant].").

¶ 3.     One evening in October 2017, defendant crashed his car into a tree. A state trooper responded to the scene along Route 100 near Londonderry. Defendant explained to the trooper that he had caught himself nodding off while driving to meet a friend for dinner. After turning his car around to return home, according to defendant, he contemplated pulling over to rest. But he did not pull over. He subsequently fell asleep while driving and awoke to the airbags deploying upon his crashing into the tree. Defendant told the trooper that he had taken antibiotics earlier that day, which he thought may have aggravated his fatigue. Although defendant also admitted to drinking three beers, he reported that he had finished the last one several hours before the accident. Defendant also told the trooper that he had been convicted of driving under the influence of alcohol (DUI) in 2005 and his license had only been reinstated one month before this crash, after being suspended for more than twelve years.

¶ 4.     Observing defendant, the trooper noted signs consistent with alcohol intoxication and attempted to conduct roadside testing to assess defendant's degree of impairment.[1]  But,

---

[1]  Defendant disputes on appeal whether the sentencing court could permissibly rely on certain facts in the affidavit of probable cause consistent with defendant having been intoxicated by alcohol at the time of the crash. Specifically, he disputes the facts derived from the responding trooper's roadside observations: defendant smelled "moderately" of alcohol, his eyes were watery and bloodshot, his mouth was dry, he had difficulty speaking, and when the trooper attempted to

2

defendant's back had been injured in the crash, which interfered with his ability to perform the tests. After declining to provide a preliminary breath sample, defendant was taken to the hospital for medical treatment. At the hospital, defendant consented to an evidentiary blood draw to test for alcohol or drugs. A sample of defendant's blood was taken about three-and-a-half hours after the crash. It was tested for alcohol by the laboratory, and, according to the report, any amount of ethanol in defendant's blood at the time of the blood draw was below the laboratory's reporting threshold. The trooper never requested that defendant's blood sample be tested for drugs, and it was never so tested.

¶ 5. The State initially charged defendant with one count of DUI second offense, 23 V.S.A. § 1201(a)(2), and one count of careless or negligent vehicle operation, 23 V.S.A. § 1091(a). The parties then entered into a plea agreement under the following terms: the DUI charge was amended to a charge of grossly negligent operation, 23 V.S.A. § 1091(b), to which defendant pleaded guilty. The State dismissed the charge of careless and negligent operation. At a contested sentencing hearing, the State submitted evidence establishing that defendant had four prior DUI convictions: two from the late 1970s and two in 2005. Defense counsel submitted into evidence the blood-test results and a medical record confirming defendant's back fracture.

---

conduct the horizontal gaze nystagmus (HGN) test, defendant could not follow the trooper's finger (so the trooper could not take a clear reading for the test, which assesses whether defendant's eyeballs "jerk"—a nystagmus—indicating possible alcohol use). See State v. Wilt, 2014 VT 114, ¶ 9 n.2, 198 Vt. 1, 109 A.3d 439 (explaining HGN test methodology).

Defendant first objected to the sentencing court's reliance on facts in the probable cause affidavit at oral argument, explaining that although the affidavit was part of the trial court's file, it was not an exhibit at the sentencing hearing and should not be relied upon to fashion probation conditions. However, rather than make this evidentiary objection during the sentencing hearing, defense counsel argued to the sentencing court that if the defendant "acknowledge[d]" to the trooper that he used drugs, this acknowledgment was "unrecorded." This was not an objection, nor did it challenge the trooper's roadside observations. We note further that at oral argument, defendant conceded that it was appropriate for the sentencing court to rely on his statement to the trooper that he had consumed alcohol earlier in the day and was taking antibiotics. Because this issue was unpreserved and because the facts are not necessary to reach our conclusion, we decline to decide whether and under what circumstances a sentencing court may rely on information contained in the affidavit of probable cause.

¶ 6.     The State conceded that it could not prove beyond a reasonable doubt that defendant was impaired by drugs or alcohol when defendant crashed his car, which was why the State dismissed the DUI charge.  Still, it argued for the court to find that defendant's use of drugs and alcohol played a role in causing the crash for several reasons: defendant had four prior DUI convictions; he admitted that he drank three beers several hours before the crash; the responding trooper observed signs in defendant at the scene consistent with alcohol intoxication; defendant admitted that he had taken antibiotics and suggested that this medication may have contributed to his drowsiness; drugs and alcohol, "especially combined," often cause drowsiness; and the negative blood-test result for alcohol, taken more than three hours after the accident, did not rule out the possibility of alcohol impairment at the time of the crash.[2]  Thus, the State requested a sentence of eighteen to twenty-four months of incarceration, all suspended except thirty days to serve and probation conditions relating to drugs and alcohol.

¶ 7.     Defense counsel countered by arguing that the court should infer from defendant's statement and the blood test—which did not establish that he had alcohol in his system—that defendant had a few beers early in the day, showered, and then drove to meet a friend for dinner with a blood-alcohol level of zero.  As for drug impairment, defense counsel argued that defendant's admission to using antibiotics should be discounted because at the time of the admission he had been significantly injured.  Moreover, use of antibiotics is not illegal if prescribed and, counsel suggested that antibiotics would not have impaired defendant's ability to drive.  Defense counsel argued further that the theory that this case involved drug use is contradicted by

_____

[2] The State, defendant, and the court engaged in an extended discussion of elimination rates.  The elimination rate is the rate at which the human body metabolizes alcohol.  The discussion considered the theoretical possibility, despite defendant's negative blood test three-and-a-half hours after the crash, that defendant could have had up to a .06 blood-alcohol level at the time of the crash. See State v. Nugent, 2014 VT 4, ¶ 8, 195 Vt. 411, 88 A.3d 429 (discussing variability in elimination rates).  Typically, expert testimony is necessary to establish the amount of alcohol in the body based on an elimination rate.  But whether the trial court relied on background knowledge to establish a suspected blood-alcohol amount of .06 is irrelevant to our decision here, so we do not address this further.

the trooper's decision not to test defendant's blood sample for drugs. Counsel requested that defendant be fined, and, if the court believed supervision was needed, that he be placed on administrative probation.

¶ 8. The sentencing court found that the precise extent of defendant's impairment was unclear, but defendant was overtired, consumed alcohol on the day of the crash, and had multiple prior convictions for driving while intoxicated. The court observed that defendant was fortunate to have only hit a tree and suffered relatively mild injuries. He could have killed someone. In fashioning a sentence, the court explained that based on defendant's prior record and the potential involvement of drugs or alcohol in this case, the court could not "ignore what I think is [defendant's] need for alcohol and drug programming." This programming, the court explained, would serve both rehabilitative and public-safety interests.

¶ 9. The court sentenced defendant to a $400 fine, six to eighteen months of incarceration, all suspended except two days, eighteen months of probation, and a series of probation conditions, which included the following relating to drugs and alcohol:

> Condition L. You must not buy, have or use any regulated drugs unless they are prescribed by a doctor.
>
> Condition M. Your probation officer or any other person authorized by your probation officer can require you to have random urinalysis testing.
>
> [Special Condition] 1. You must not buy, have or drink any alcoholic beverages; you must submit to any alcosensor test or any other alcohol test[.]
>
> [Special Condition] 3. You must have alcohol and/or drug screening. If the screening shows that counseling and/or treatment is needed, you must attend and participate in whatever counseling and/or treatment your probation officer tells you to do. You must complete counseling and/or treatment to your probations officer's satisfaction.
>
> [Special Condition] 4. You must allow any treatment or counseling program to tell your probation officer and the court about your attendance and participation in the program.

¶ 10.    With respect to the drug conditions, the court explained that Conditions L and M were necessary because "there is a suggestion of a history of substance abuse."  The court acknowledged, however, despite this "suggestion," that whether defendant had taken drugs on the day of the incident was "not clear."  Thus the court noted the possibility that, after an initial screening, defendant might be adjudged to not have a drug problem.  Defense counsel objected to the imposition of these drug-related conditions.

¶ 11.    As for the alcohol conditions, in imposing Special Conditions 1, 3, and 4, the court noted that defendant had several prior convictions for driving while impaired by alcohol.  And the court explained that defendant "had been drinking alcohol at the time of the crash," although it could not "stat[e] whether he was or was not under the influence."  Thus, the court concluded that defendant should be prohibited from consuming alcohol.

¶ 12.    Defendant effectively raises two issues on appeal.  First, he requests that this Court reverse all five probation conditions that pertain to drug and alcohol use because his offense did not involve drugs or alcohol; therefore, he contends, that the conditions were not reasonably related to the offense.   Second, he argues that Condition M and Special Condition 3 (the random drug- and alcohol-testing conditions) violate the Fourth Amendment to the United States Constitution and Article 11 of the Vermont Constitution because they permit warrantless searches by a probation officer without requiring the officer to have reasonable suspicion of the prohibited conduct (alcohol or drug use).   Defendant asks this Court to strike these conditions as unconstitutional or remand for the sentencing court to amend the testing conditions to require reasonable suspicion before an officer may conduct any drug or alcohol testing.

I.  Plain Error

¶ 13.    Defendant did not raise any objection on constitutional grounds at the sentencing hearing.  And defendant has not argued on appeal that his constitutional claim rises to the level of plain error.  On appeal, we review unpreserved issues for plain error.  V.R.Cr.P. 52(b); State v. Yoh, 2006 VT 49A, ¶ 36, 180 Vt. 317, 910 A.2d 853 ("When an issue has been forfeited through

a party's failure to raise it below or brief it on appeal, we may consider it only under the rubric of plain error.").

¶ 14. "While most of our cases regarding plain error arise from situations where appellate counsel briefs an issue not preserved below, plain error is also applicable when appellate counsel fails to raise an issue, or raises it in an untimely fashion." Yoh, 2006 VT 49A, ¶ 37 (collecting cases). However, at times we have declined to engage in plain-error analysis where a party fails to argue on appeal that an issue meets the plain-error standard. See, e.g., State v. Brown, 2010 VT 103, ¶¶ 15-16, 189 Vt. 88, 15 A.3d 107 (concluding that limiting instruction addressed defendant's objection at trial and declining to review additional unpreserved issues regarding same instruction where plain error was not argued); State v. Hinchliffe, 2009 VT 111, ¶ 34, 186 Vt. 487, 987 A.2d 988 (declining to address purported constitutional vagueness and overbreadth of stalking statute first raised on appeal absent plain-error argument).

¶ 15. Moreover, in some cases plain-error review is not feasible because the factual record is not adequately developed, and we have accordingly declined to engage in plain-error review. See, e.g., State v. Cameron, 2016 VT 134, ¶ 16, 204 Vt. 52, 163 A.3d 545 (explaining that unpreserved motion to suppress results in inadequate record development and waiver of plain-error review); State v. Bogert, 2013 VT 13A, ¶ 29, 197 Vt. 610, 109 A.3d 883 (declining to address defendant's argument that search violated random-compliance-check standard because trial court had no opportunity "to take evidence and to make findings addressing that argument"); State v. White, 172 Vt. 493, 499, 782 A.2d 1187, 1192 (2001) (declining to address failure-to-preserve-evidence claim where defendant did not cross examine expert witness' conclusions contrary to defendant's theory on appeal); see also United States v. Navarro, 800 F.3d 1104, 1113 (9th Cir. 2015) ("This court has discretion to decide whether to reach [an unpreserved issue] where the issue presented is a purely legal one and the record below has been fully developed." (quotation omitted)). Here, we decline to engage in plain-error analysis because appellant did not argue for

plain-error review and the factual record is insufficiently developed to conduct a plain-error analysis.

¶ 16. By not raising the constitutional challenge to drug and alcohol testing below, the parties and the sentencing court were deprived of an opportunity to develop a factual record on the reasonableness of suspicionless drug and alcohol testing as a condition of probation. There is no record evidence of the protocol for conducting random testing—such as the frequency of random testing, the randomization process, or the hours that testing may occur—of probationers in Vermont or Connecticut (where defendant resides, and, presumably, at least some testing might take place). Yet, whether urinalysis sample collection involves direct observation has been foundational to the constitutional analysis in other cases on this issue. See Skinner v. Ry. Labor Execs.' Ass'n, 489 U.S. 602, 624-33 (1989) (upholding random urinalysis of employees in part because collection did not involve direct observation).

¶ 17. Thus, the reasonableness of conducting drug or alcohol testing of a probationer, which must be evaluated in light of a probationer's privacy interests under Article 11 and the Fourth Amendment, may be a highly fact-dependent question. See State v. Kirchoff, 156 Vt. 1, 10, 587 A.2d 988, 994 (1991) (explaining that Article 11 analysis regarding open-fields doctrine "will depend on the specific facts of each case"); New Jersey v. T.L.O., 469 U.S. 325, 337 (1985) (noting that reasonableness of Fourth Amendment search is fact dependent); York v. Wahkiakum School Dist. No. 200, 178 P.3d 995, 1008 (Wash. 2008) (en banc) (Madsen, J., concurring) (mentioning need for fact-intensive inquiry for state-constitutional analysis of warrantless drug testing of probationers). The range and complexity of undeveloped issues highlight the need for parties to preserve objections for appellate review. See Vernonia School Dist. 47J v. Acton, 515 U.S. 646, 658 (1995) (upholding random drug testing of students only after extensive consideration of testing methodology and how test results were to be used). Thus, we decline to decide the issue

8

of whether imposing random drug or alcohol testing as probation conditions violates the United States or Vermont Constitutions.[3]

¶ 18.    Defendant also did not object to the alcohol-related conditions (Special Conditions 1, 3, and 4) before the sentencing court.  And he does not argue on appeal that imposing these conditions constituted plain error.  Because he has not argued plain error on appeal, we decline to consider his challenge to these conditions for plain error.  See Yoh, 2006 VT 49A, ¶ 37 (explaining this Court has discretion in deciding whether to review unpreserved issues for plain error where not adequately briefed on appeal).[4]

---

[3]  The United States Supreme Court has not decided whether imposing random drug- or alcohol-testing conditions upon a probationer violates the Fourth Amendment.  Likewise, we have not decided that question under Article 11.  State v. Putnam, 2015 VT 113, ¶ 57 n.16, 200 Vt. 257, 130 A.3d 836.  Defendant argues, for the first time on appeal, that our holding in State v. Cornell, 2016 VT 47, ¶ 40, 202 Vt. 19, 146 A.3d 895, should be extended to cover imposing random drug and alcohol testing as a probation condition.  In Cornell, we held that a condition requiring a probationer to give his or her probation officer "search and seizure privileges" over personal property must, among other things, explicitly require that the officer have some reasonable articulable suspicion that the probationer is actually in possession of contraband.  Id. ¶¶ 27, 40.  Whether the Article 11 protections over personal property search and seizures recognized in Cornell are appropriately extended to the context of random drug and alcohol testing is the question that we decline to consider for plain error.  We note the existence of potentially contrary persuasive authority on the question to demonstrate that, indeed, this is an undecided question.  State v. Kane, 2017 VT 36, ¶ 40, 204 Vt. 462, 169 A.3d 762 (holding that "[u]nder [defendant's] circumstances," Article 11 did not require suspicion for imposing probation condition requiring GPS monitoring).

Even if we attempted to conduct plain-error review, there would be no error because, as explained above, defendant seeks a novel extension of constitutional law.  A novel constitutional argument does not rise to the level of plain error because it is not an "obvious" error for a trial court to fail to extend the meaning of the constitution on its own motion.  State v. Schmitt, 150 Vt. 503, 505, 554 A.2d 666, 668 (1988) (holding that novel, unpreserved constitutional arguments are "far from obvious, and could not rise to the level of plain error").

[4]  It is undisputed that defendant has four convictions for DUI, and, as a result, his driver's license was suspended for more than a decade.  Moreover, his license was only reinstated one month before the crash.  And, defendant admits that he consumed several beers on the day of the crash.  These facts reasonably support the sentencing court's imposition of conditions prohibiting defendant's use of alcohol and requiring that he submit to random testing for alcohol as a means of protecting the public and deterring future unsafe driving by defendant.  By imposing these conditions the court did not err, much less commit plain error.

## II.  Drug-Related Conditions

¶ 19.  Because defendant preserved nonconstitutional objections to the drug-related conditions, we address whether the sentencing court properly imposed them.  A sentencing court has broad authority to impose probation conditions.  State v. Levitt, 2016 VT 60, ¶ 21, 202 Vt. 193, 148 A.3d 204.  Our review on appeal is for an abuse of discretion.  Putnam, 2015 VT 113, ¶ 44.  This is a limited and "deferential" form of review.  See State v. Bailey, No. 2013-457, 2014 WL 3714964, * 2 (July 24, 2014) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo13-457.pdf [https://perma.cc/7XN7-V26H].

¶ 20.  As an initial matter, a probation condition that prohibits criminal conduct is valid.  Putnam, 2015 VT 113, ¶ 56 (explaining that no finding of reasonable relationship is necessary where condition prohibits illegal conduct).  Accordingly, we affirm the sentencing court's imposition of Condition L prohibiting the purchase or possession of regulated drugs without a valid prescription.  See id. ("A condition that forbids criminal conduct is valid.").  We have repeatedly upheld this condition, even where drugs were not involved in the offense and the probationer did not have a history of drug abuse.  See, e.g., State v. Lumumba, 2018 VT 40, ¶¶ 22-23, 207 Vt. 254, 187 A.3d 353; Levitt, 2016 VT 60, ¶¶ 33-34; State v. Albarelli, 2016 VT 119, ¶ 56, 203 Vt. 551, 159 A.3d 627; Putnam, 2015 VT 113, ¶¶ 55-56.

¶ 21.  For all probation conditions other than those that prohibit illegal conduct, a court may impose conditions that the court "in its discretion deems reasonably necessary to ensure that the offender will lead a law-abiding life or to assist the offender to do so."  28 V.S.A. § 252(a); see also id. § 252(b)(18) (explaining courts may impose, in addition to enumerated conditions in 28 V.S.A. § 252(b), "any" probation condition if reasonably related to rehabilitation).  This standard requires that the condition "be reasonably related to a defendant's particular characteristics, including the crime for which the defendant was convicted."  Putnam, 2015 VT 113, ¶ 38.  To impose any such condition, the sentencing court must make "a particularized inquiry into the considerations pertinent to a specific defendant."  Id. ¶ 43.  However, we do not require

10

"the sentencing court to make specific findings regarding each condition, but have looked to whether the record supports the court's exercise of its discretion." Id. ¶ 45.

¶ 22. We reverse Condition M—requiring defendant to submit to random urinalysis testing for drugs—and strike the "and/or drug" language in Special Condition 3 because these conditions are not reasonably related to the offense or to defendant's history or characteristics. The findings by the trial court and the facts and circumstances of the case do not support a finding that defendant was impaired by drugs on the day of the accident. Indeed, the sentencing court found, notwithstanding defendant's admission to having used antibiotics on the day of the crash, that the evidence of drug use by defendant here was "not clear." The court reiterated this lack of certainty when it observed that a drug screening might show that defendant did not have a drug problem. Thus, not only did the court not make findings of drug use by defendant on the day of the crash, the court's findings contradicted such a conclusion.

¶ 23. The record supports this lack of certainty as to defendant's drug use. The State provided no explanation for why the blood test at the hospital only screened for alcohol and not also drugs despite defendant's consent to testing for both. Moreover, even if it had been shown that defendant had used antibiotics on the day of the crash, there is no indication in the record that antibiotics cause drowsiness or that defendant was under the influence of them to such an extent that they played a role in the crash. Cf. State v. Rifkin, 140 Vt. 472, 476, 438 A.2d 1122, 1124 (1981) (holding that witness must be expert-qualified to opine at DUI-drug trial that defendant's drug use rendered him or her impaired).

¶ 24. Additionally, Condition M—random urinalysis to test for drugs—and the "and/or drug screening" language in Special Condition 3 are means of enforcing Condition L, which prohibits the purchase or possession of unprescribed "regulated drugs." Yet the record contains no information suggesting that defendant's use of antibiotics involved "regulated drugs" not prescribed by a physician. See 18 V.S.A. § 4201(29) (defining "regulated drug" as narcotics, depressants or stimulants, hallucinogens, ecstasy, marijuana, or methamphetamine). Moreover, it

11

is undisputed that defendant has no history of abusing regulated drugs.[5] Because Condition M has no relationship to this defendant's conviction, history, or characteristics, it is hereby stricken. See Albarelli, 2016 VT 119, ¶ 57 (reversing Condition M because record did not indicate history of drug use nor were drugs involved in offense); see also Putnam, 2015 VT 113, ¶ 57 (reversing Condition M because: (1) defendant's conviction was not related to drugs; (2) there was no evidence defendant was under influence of drugs at time of offense; and (3) there was no evidence defendant had history of drug abuse). For the same reasons, the Court strikes the "and/or drug" language in Special Condition 3.

¶ 25.    Finally, the State has cited to an unpublished entry order in which we affirmed a probation condition requiring a defendant to attend a safe-driving class. State v. McKee, No. 2017-097, 2017 WL 5989909 (Vt. Dec. 1, 2017) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo17-097.pdf [https://perma.cc/C38Z-BKEN]. The State argues that in this case we affirmed the imposition of a probation condition as reasonably related to the offense with less evidence in the record than is present here. In McKee, the defendant pleaded guilty to grossly negligent operation of a motor vehicle after consuming a mixture of prescription drugs fifteen hours before the accident and crashing her car head-on into oncoming traffic. The court imposed a probation condition requiring her to attend a safe-driving class for impaired drivers. She appealed, arguing that this had no reasonable relationship to her offense or rehabilitation. We affirmed, holding that the trial court could reasonably infer from its findings that drug impairment "contributed to the cause of the accident." Id. at *2-3.

---

[5] The trial court noted that defendant had a history of "substance abuse." It is clear from defendant's history of DUI convictions involving alcohol that he indeed has a history of abusing one substance: alcohol. But nothing in the record suggests any history of abusing drugs. Separate probation conditions involving breath testing for alcohol and urine testing for drugs are inappropriate where only one such condition—the test for alcohol—finds support in the record.

¶ 26.  <u>McKee</u> is distinguishable.  The probation condition in <u>McKee</u> requiring the defendant to attend classes for impaired drivers was reasonably related to the defendant's circumstances: she was suffering from depression, had caused a head-on collision, and had displayed an array of symptoms consistent with being medically impaired by drugs at the scene of the crash.  In contrast, here Condition M requires that defendant submit to random drug testing to screen for unprescribed, regulated drugs.  Yet, as explained above, random drug testing is not reasonably related to defendant's history or his conviction: the sentencing court could not determine if he was impaired by drugs on the day of the accident; he did not display symptoms that, based on the record, were consistent with drug use; and it is undisputed that he had no history of illicit drug use.  Indeed, unlike the cocktail of drugs in <u>McKee</u>, which included one drug that was referred to as a sleep aid, there is no indication on this record that antibiotics can cause drowsiness.  Therefore, we are not guided by <u>McKee</u>.

<u>Condition M (the random-drug testing condition) and the language "and/or drug" in Special Condition 3 (the drug-screening condition) are stricken from defendant's probation order. We affirm the remainder of defendant's probation conditions.</u>

FOR THE COURT:

_____
Associate Justice

¶ 27.  **ROBINSON, J., concurring.**  I concur in the majority's mandate, and much of its reasoning, but write separately to address an aspect of the majority's rationale that I cannot join: I do not believe that the fact that an appellant has raised an error as if it were preserved, and has not expressly asked us to review for "plain error," is a reason to decline to address a plain error that affects substantial rights.  I join the majority in declining to reach the defendant's constitutional challenge to the conditions authorizing suspicionless drug and alcohol testing, and his challenge to the conditions imposing special alcohol-related conditions, because the factual record is insufficiently developed to consider these challenges under a plain-error standard.

13

¶ 28.   A party's failure to invoke the plain-error standard in arguing an unpreserved issue on appeal is not itself a reason to decline to review a challenged ruling for plain error.  The majority's suggestion otherwise is inconsistent with the text of the rule establishing plain-error review, conflicts with the constitutional principles underlying that rule, makes little sense in light of our case law providing that a party need not raise a claim of error at all on appeal to trigger our plain-error review, is inconsistent with the approach we have taken in some cases, and relies on prior cases that do not support the proposition or supply any rationale for it.  We may have good reason for declining to engage in plain-error review when the manner in which a party has argued an appeal prevents us from properly analyzing a question, but the mere fact that a party has treated a claim of error as preserved, when we conclude it is not, is not in itself a reason to decline to review and correct a plain error that affects substantial rights.

¶ 29.   Vermont Rule of Criminal Procedure 52(b) provides, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  The rule is based on Federal Rule of Criminal Procedure 52(b).  Reporter's Notes, V.R.Cr.P. 52.  Although the rule is intended as a rule for the trial courts, the Reporter's Notes acknowledge that it is presumably also followed by the Supreme Court.  The Reporter's Notes explain that "an appellate court will notice errors not properly raised before it if they are obvious and affect the fair administration of justice or defendant's constitutional rights.  Exercise of the power is exceptional but may be on the court's own motion or at the request of counsel."  Id.  The United States Supreme Court has explained that, although Rule 52(b) gives appellate courts discretion as to whether to review unpreserved errors, appellate courts "should correct a plain forfeited error affecting substantial rights if the error seriously affects the fairness, integrity or public reputation of judicial proceedings."  United States v. Olano, 507 U.S. 725, 736 (1993) (emphasis added) (quotation omitted).  This rule is clear that this Court can and should correct plain error that affects the fairness, integrity, or public reputation of judicial proceedings even if it is not brought to our attention at all.

14

¶ 30. That makes sense given the purpose of plain-error review. The United States Supreme Court has recognized that even though appellate courts don't generally consider issues not raised below, "[r]ules of practice and procedure are devised to promote the ends of justice, not to defeat them." Hormel v. Helvering, 312 U.S. 552, 557 (1941). For that reason, "[a] rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice." Id. These values infuse Rule 52 and the Court's discretion over plain-error review. See Olano, 507 U.S. at 732 (linking the principles just cited to Federal Rule 52(b)). Insofar as the purpose of plain-error review is to enable an appellate court to correct obvious errors affecting substantial rights when they seriously affect the fairness, integrity, or public reputation of a judicial proceeding, it makes little sense to point to the failure to recite the plain-error standard on appeal as a reason to decline to conduct plain-error review.

¶ 31. Moreover, invoking the failure to recite the plain-error standard in this case, where the claim of error was actually raised on appeal as if it were a preserved error, is inconsistent with our recognition that we can and in some cases should engage in plain-error review even if the error has not been raised at all on appeal. See State v. Yoh, 2006 VT 49A, ¶ 37, 180 Vt. 317, 910 A.2d 853 (recognizing that plain error is applicable even when appellate counsel fails to timely raise and brief a claim of error on appeal). If we can, and should, rectify obvious errors that affect the fairness and integrity of the judicial proceeding even if not specifically raised on appeal, then we most definitely can and should rectify such errors when they are briefed, albeit pursuant to the incorrect standard of review. For that reason, we have sometimes reviewed for plain error where an appellant raised the claim of error in a preserved-error framework. See, e.g., State v. Bellanger, 2018 VT 13, ¶ 12, 206 Vt. 489, 183 A.3d 550; State v. Bangoura, 2017 VT 53, ¶¶ 5-6, 205 Vt. 36, 171 A.3d 50 (noting that court can review for plain error on its own motion); State v. Faham, 2011 VT 55, ¶ 26, 190 Vt. 524, 21 A.3d 701 (mem.).

15

¶ 32.     To the extent that we have in other cases suggested that failing to invoke the plain-error standard is in itself a sufficient reason to decline to review for plain error, the case law upon which we have relied provides little support and no rationale for such a position. In State v. Brown, we did, as the majority recognizes, decline to review a jury instruction challenged for the first time on appeal for plain error because plain error was not raised on appeal. 2010 VT 103, ¶ 16, 189 Vt. 88, 15 A.3d 107. In doing so, the Court simply cited to State v. Hinchliffe. Id. (citing Hinchliffe, 2009 VT 111, ¶ 33, 186 Vt. 487, 987 A.2d 988). In Hinchliffe, we likewise declined to reach a claim of error that was raised on appeal but not preserved below on the basis that the defendant had not grounded the argument on appeal in plain error. 2009 VT 111, ¶ 34. In doing so, the Court simply cited State v. Jackson, 2008 VT 71, ¶ 7, 184 Vt. 173, 956 A.2d 1126, and State v. Covino, 163 Vt. 378, 381, 658 A.2d 916, 918 (1994). Id. In Covino, we cited no case law and provided no substantive rationale supporting our refusal to apply plain-error analysis. 163 Vt. at 381, 658 A.2d at 918. In Jackson, we cited State v. White. 2008 VT 71, ¶ 7 (citing White, 172 Vt. 493, 499, 782 A.2d 1187, 1192 (2001)). In White, we cited State v. Devine. 172 Vt. at 499, 782 A.2d at 1192 (citing Devine, 168 Vt. 566, 568-69, 719 A.2d 861, 864 (1998), overruled on other grounds by State v. Cameron, 2016 VT 134, 204 Vt. 52, 163 A.3d 545). And in Devine, this Court did not actually mention plain error at all, and its analysis did not involve a failure to invoke plain-error review on appeal. The case involved the admissibility of certain evidence introduced at trial. This Court wrote, "Defendant did not raise this issue before the trial court. We therefore decline to address it on appeal." 168 Vt. at 568-69, 719 A.2d at 864 (citing State v. Jones, 160 Vt. 440, 448, 631 A.2d 840, 846 (1993)). And, finally, in State v. Jones, which appears to be the root of this line of cases, this Court considered an argument on appeal that the trial court erred in allowing a previously undisclosed witness to testify on rebuttal. We said, "We do not address this issue because it was not raised below." 160 Vt. at 448, 631 A.2d at 846. The point of this litany of citations is that, through a series of generic citations with no substantive discussion, the general rule that we do not review issues not raised below (which is itself subject to an exception for plain-

16

error review) morphed into a refusal to engage in plain-error review where an appellant did not specifically invoke plain error, with no discussion or underlying rationale. Given the countervailing considerations set forth above, and the inconsistency within our own case law, I do not believe this line of authority merits any deference. Instead, we should overrule the above cases to the extent they support the majority's proposition, and recognize that the failure of an appellant to expressly invoke "plain error" on appeal is not a basis for exercising our discretion to decline plain-error review.

¶ 33. I join the majority's exercise of discretion to decline to review the constitutional challenges to the probation conditions because I agree that, by failing to preserve these arguments below, defendant also failed to create a sufficient record to enable us to review the claims of error. To evaluate the constitutionality of a probation condition purporting to authorize suspicionless drug and alcohol testing, we have applied a special-needs/balancing framework. See State v. Moses, 159 Vt. 294, 303-05, 618 A.2d 478, 483-84 (1992) (applying standard from Griffin v. Wisconsin, 483 U.S. 868, 872 (1987)); see also State v. Lockwood, 160 Vt. 547, 556-60, 632 A.2d 655, 661-63 (1993) (adopting Griffin standard for cases arising under Article 11). Our Fourth Amendment and Article 11 case law identifies a number of factors that may be relevant to the constitutional analysis, some of which require the development of a record.[6]

¶ 34. In State v. Lockwood, this Court analyzed a collateral challenge to the constitutionality of a probation condition allowing warrantless searches of a probationer's living quarters by a probation officer. 160 Vt. at 555-56, 632 A.2d at 661. Applying the special-needs/balancing framework described by the United States Supreme Court in Griffin v. Wisconsin, 483 U.S. at 872, this Court concluded that probation conditions allowing warrantless searches upon

---

[6] This case law more accurately frames the state and federal constitutional analysis of probation conditions requiring suspicionless drug or alcohol testing than United States Supreme Court precedent concerning the constitutionality of federal regulations governing drug and alcohol testing of railroad employees. See ante, ¶ 16.

reasonable suspicion may be constitutionally permissible when they are "supported by the findings and are narrowly tailored to fit the circumstances of the individual probationer" and explained that the condition should be individualized to the supervision needs of the particular probationer. Lockwood, 160 Vt. at 556-57, 632 A.2d at 661 (quotation omitted). Insofar as the probation condition at issue allowed a search by a probation officer with or without reasonable suspicion, we recognized that the condition could be unconstitutional, but we concluded that because the search at issue in that case was in fact narrowly and properly made on the basis of reasonable suspicion, the error in the probation condition was overcome and defendant's Fourth Amendment rights were not violated. Id. at 558, 632 A.2d at 662. The implication of this Court's reasoning is that a warrantless, suspicionless search would not have been constitutionally permissible notwithstanding a probation condition purporting to authorize such a search.[7] Id.

¶ 35. Subsequently, in State v. Bogert, we considered a collateral challenge to a provision allowing a warrantless search of the computer of a convicted sex offender on conditional reentry status. 2013 VT 13A, 197 Vt. 610, 109 A.3d 883. Using the same special-needs/balancing approach as in Lockwood, and relying heavily on the relatively lesser expectation of privacy in the conditional reentry context, we upheld the condition. Id. ¶¶ 1, 18, 20-26. But we also emphasized that even where suspicionless searches are authorized, the State's authority is subject to limits. Id. ¶ 27. The Court explained, "Even in the context of warrantless searches of inmates' cells within a prison, we have identified three factors central to our analysis of the permissibility of a random search of a prison cell: '(1) the establishment of clear, objective guidelines by a high-level administrative official; (2) the requirement that those guidelines be followed by implementing officials; and (3) no systematic singling out of inmates in the absence of probable cause or

_____

[7] In part on the basis of this authority, we held more recently that a probation condition allowing warrantless search and seizure of, among other things, digital media and computers, was impermissible in the absence of any requirement of reasonable suspicion, and remanded so that the trial court could amend the condition. State v. Cornell, 2016 VT 47, ¶ 28, 202 Vt. 19, 146 A.3d 895.

18

articulable suspicion.' " Id. ¶ 27 (quoting State v. Berard, 154 Vt. 306, 314, 576 A.2d 118, 122 (1990)).

¶ 36.    This case law highlights the gaps in this record arising from defendant's failure to preserve his challenges below.  We have no record evidence regarding the strength of the State's need for warrantless or suspicionless drug or alcohol testing to achieve its special need of rehabilitation, nor any evidence of the manner of testing to enable us to assess the degree to which the condition allows for impingement on a probationer's reasonable privacy expectations.  Even if suspicionless searches of this type are constitutionally permissible, we have no evidence to evaluate whether the minimal constitutional requirements identified in Berard are met here.  For example, we do not know whether the testing protocols are governed by clear, objective guidelines issued by high-level officials and implemented consistently in practice; we don't even know whether the "random" tests authorized in Condition M are truly randomized.  For these reasons, it would be impossible to fairly evaluate defendant's constitutional challenge.

¶ 37.    Likewise, this Court could appropriately decline to review the challenges to the conditions concerning alcohol-related screening and treatment on the basis that defendants' failure to object to the conditions below deprived the trial court of the opportunity to take evidence on the questions.  On the basis of the evidence in the record, as noted ante, ¶ 18, n.4, the trial court's imposition of these conditions does not rise to the level of plain error.

_____

Associate Justice

19